(240 P.3d 601)
No. 102,629

JACK W. MORELAND, *Appellee*, v. PERKINS, SMART & BOYD,
*Appellant*.

Opinion filed October, 1, 2010.

*Laura L. McConwell* and *Edward A. McConwell*, of McConwell Law Offices, of Mission, for the appellant.

*Jeffrey S. Kruske*, of Law Office of Jeffrey S. Kruske, P.A., of Overland Park, for the appellee.

Before HILL, P.J., PIERRON and LEBEN, JJ.

PIERRON, J.: In this employment termination case, Perkins, Smart & Boyd, Inc., (PSB) appeals the district court's decision to affirm an arbitration award entered in favor of Jack W. Moreland.

PSB argues the court erred in denying a motion to vacate the arbitration award because the arbitration panel manifestly disregarded or willfully ignored controlling Kansas law. PSB also argues the court erred in granting sanctions and attorney fees in favor of Moreland. We vacate the sanctions but affirm the award.

For the most part, the parties do not dispute the controlling facts in this case. Rather, the issues involve questions of law and application of the law by the arbitration panel.

In October 2006, Moreland worked for PSB, an investment firm. PSB terminated Moreland upon allegations that he forged the names of his wife, son, and daughter on a letter of instruction to a mutual fund company in order to redeem fund shares from a trust set up for their benefit.

Both Moreland and PSB were subject to the rules and regulations of the Financial Industry Regulatory Authority (FINRA). Upon his termination, PSB was required to submit a Form U-5 to FINRA indicating the reasons for termination. PSB filed the Form U-5 on October 27, 2006. On the Form U-5, PSB gave the following reason for Moreland's termination:

"Mr. Moreland had a notary public notarize signatures of his wife, son and daughter that he had forged. This is conduct that is inconsistent with standards of this firm. The document that he signed was a letter to a mutual fund redeeming fund shares from a trust that was set up by his deceased mother-in-law for the benefit of Mr. Moreland and [his] children."

Moreland was outraged with the allegation of forgery and immediately voiced his concerns to PSB. Mrs. Moreland and her children told PSB they had in fact signed the letter and confirmed this in affidavits filed in November 2006. On October 27, 2006, and November 1, 2006, F. Scott Perkins, president/CEO of PSB, entered Registration Comments with FIRNA stating respectively: "I incorrectly stated in my comments that Mr. Moreland's deceased set up a trust for 'Mr. Moreland and his children'. It should have said 'for Mr. Moreland's wife and children.' " PSB also wrote: "I had put that Mr. Moreland was permitted to resign. The reasons listed are not true. There was no forgery involved."

On April 24, 2007, Moreland filed a claim with National Association of Securities Dealers (NASD), now FINRA, alleging that

as a result of the statements made in PSB's Form U-5, he had been turned down for employment by multiple insurance companies and brokerage firms. Moreland stated the signatures on the letter were not forged. But he had persuaded/asked the notary public to notarize the letter without the signatories present. Moreland alleged claims of defamation, violation of the Kansas Uniform Trade Practices Act, tortious interference with business expectancy, and false light/invasion of privacy. Moreland requested no less than $100,000 in damages, expungement of the statement, punitive damages, and attorney fees. PSB denied any wrongdoing and pled several affirmative defenses, including privilege.

PSB and Moreland were required to submit to arbitration on Moreland's claim. The parties agreed on a three-person arbitration panel, and the matter was submitted to the panel during an evidentiary hearing September 3-5, 2008. Both Moreland and PSB submitted briefs and argued the law and facts to the panel. After consideration of the presentation, the panel granted an award in favor of Moreland. The panel specifically found that "[Moreland] was not involved in the alleged forgery and that such allegation was false. The issue was not disputed as evidenced by [PSB's] attempted retraction soon after the event." The panel awarded $65,000 in compensatory damages to Moreland and also reimbursement for the filing fee. The panel also granted Moreland's request for expungement of language in the Form U-5 concerning the forgery and that the form should indicate Moreland's termination was voluntary. The panel stated: "The recommended expungement is based on the defamatory nature of the information." The panel denied PSB's counterclaims and indicated that "[a]ny relief not specifically enumerated, including punitive damages and attorneys' fees, is hereby denied with prejudice." The panel assessed $6,000 in arbitration fees to PSB.

On December 8, 2008, PSB filed a motion to vacate the arbitration award in district court. PSB alleged that absolute privilege barred Moreland's claims in total and, alternatively, that qualified privilege required a finding that PSB acted with actual malice, had knowledge that a statement was false, and acted with either evil-mindedness or a specific intent to injure. PSB argued that the panel

made no findings concerning privilege and that "having knowledge of the controlling law, manifestly ignored it and exceeded their authority by granting relief to [Moreland]." Moreland filed a motion in opposition to PSB's motion to vacate and also a motion to confirm the arbitration award.

The district court denied PSB's motion to vacate. The court stated that it could not substitute its judgment for that of the arbiters with regard to the determination of the facts. The court stated there was no indication, nor did PSB raise any allegations, that the award was procured by fraud or corruption. The court found the issue of privilege was completely briefed for the panel, the arbitration panel considered PSB's claim of privilege, and "[w]hile the term 'privilege', whether qualified or absolute, was not used in the award, there is no indication that the arbiters had complete indifference to the law." The court awarded $750 in attorney fees to Moreland. The court later denied PSB's motion to alter or amend.

PSB appeals.

The Kansas Uniform Arbitration Act (Act), K.S.A. 5-401 *et seq.*, permits an appeal from an order confirming or vacating an arbitration award, pursuant to K.S.A. 5-418(a). K.S.A. 5-418(b) provides: "The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action."

On appeal, an appellate court's standard of review of an arbitration award is highly deferential and the court must affirm an award if the arbitrator acted within the scope of her or his authority. As long as errors are not in bad faith or so gross as to amount to affirmative misconduct, the appellate court is bound by an arbitrator's findings of fact and conclusions of law. *City of Coffeyville v. IBEW Local No. 1523*, 270 Kan. 322, 336, 14 P.3d 1 (2000). An arbitrator is not required to provide the reasons for his or her award. *Griffith v. McGovern*, 36 Kan. App. 2d 494, 500, 141 P.3d 516 (2006). The district court must presume an award is valid unless one of the specific grounds in K.S.A. 5-412(a) is proven. *Alexander v. Everhart*, 27 Kan. App. 2d 897, 900-01, 7 P.3d 1282, *rev. denied* 270 Kan. 897 (2000).

K.S.A. 5-412(a) sets forth five limited circumstances in which an arbitration award must be vacated:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405, as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 and the party did not participate in the arbitration hearing without raising the objection;

"But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

PSB does not argue any of those circumstances apply here.

In determining the question raised in the present case, it is helpful to review some general comments by the court in *Coleman v. Local No. 570*, 181 Kan. 969, 975-76, 317 P.2d 831 (1957), concerning the sanctity, deferential nature, and judicial economy of arbitration:

"Arbitration awards, which courts regard as valid and suitable for judicial enforcement, are neither contract nor judgment but partake of the nature of both. The award partakes of the nature of a contract because it is the result of a contract, the submission agreement, whereby the parties agree to comply with the award. It differs from a contract in that it is the act of the arbitrators, not of the parties themselves. It partakes of the nature of a judgment in that, if it is valid, it is binding upon them though imposed by an outside source.

"The dual nature of the award serves to explain the limited grounds on which it may be successfully impeached. In general it may be said that the ground urged must be good, both for attack upon a judgment and for relief against the terms of a contract. But, certain grounds that would be sufficient in an appeal from a judgment would not be grounds for impeaching an award, for the reason that the contractual element is present in the award. Thus, the fact that the arbitrator made erroneous rulings during the hearing, or reached erroneous findings of fact from the evidence, is no ground for setting aside the award, because the parties have agreed that he should be the judge of the facts. Even his erroneous view of the law would be binding, for the parties have agreed to accept his view of the law. Were it otherwise . . . , arbitration would fail of its chief purpose; instead of

being a substitute for litigation, it would merely be the beginning of litigation. Error of law renders the award void only when it would require the parties to commit a crime or otherwise to violate a positive mandate of the law. [Citation omitted.]

"Judicial intervention is ill-suited to the special characteristics of the arbitration process in labor disputes."

See *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 689, 751 P.2d 122 (1988).

The Tenth Circuit has stressed this very limited standard of review. *Durkin v. CIGNA Prop. & Cas. Corp.*, 986 F. Supp. 1356, 1357-58 (D. Kan. 1997) (citing *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 [10th Cir. [Okla.] 1995]); see also *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. (Kan.) 2000). " 'Maximum deference is owed to the arbitrator's decision,' and the standard of review 'is among the narrowest known to law.' " *Durkin*, 986 F. Supp. at 1357; see *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. (Okla.) 2001). Therefore, once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Moreover, "[b]ecause a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited." *ARW Exploration Corp.*, 45 F.3d at 1463 (quoting *Foster v. Turley*, 808 F.2d 38, 42 [10th Cir. [N.M.]1986]).

PSB claims Kansas courts have recognized nonstatutory grounds for vacating an arbitration award where an applicant demonstrates the arbitrator's award is in manifest disregard of the law. *Griffith*, 36 Kan. App. 2d at 499 (citing *Jackson Trak Group*, 242 Kan. at 689); see *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (violation of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing). An arbitrator's manifest disregard of the law occurs when the arbitrator knew of a governing legal principle yet refused to apply it. This exception does not apply when an arbitrator simply misinterprets the law. See *Jackson Trak Group*, 242 Kan. at 689; *ARW Exploration Corp.*, 45 F.3d at 1463. However, PSB does not cite any Kansas case, nor did we discover

any, where the arbitration award was actually overturned for a manifest disregard of the law. See *Griffith*, 36 Kan. App. 2d at 500; *Dunn v. A.G. Edwards & Sons, Inc.*, 2007 WL 2767997, at *7 (Kan. App. 2007) (unpublished opinion) ("the Dunns have failed to demonstrate the arbitrator manifestly disregarded the law in calculating damages, and we conclude the district court did not err in confirming the award"). Courts must tread lightly in the area of manifest disregard of the law. The statutory mandate of K.S.A. 5-412(a) indicates the legislature's clear intention to not permit a court to vacate or refuse to confirm an award even if the relief "could not or would not be granted by a court of law or equity."

In short, even though the limited scope of review of what could appear to be very odd arbitration awards might cause cold shivers to go down the spines of reviewing courts, highly limited review is the law.

We now turn to PSB's contention that it is entitled to absolute privilege regarding the statements it made in Moreland's Form U-5. Indeed, to prevail in this appeal, considering the applicable statutory and case law, that appears to be its only potential avenue for success. Without absolute privilege, the arbitrator's findings of fault on PSB's actions are dispositive.

PSB argues the arbitration panel manifestly disregarded or was willfully ignorant of controlling Kansas law on absolute privilege concerning reports such as Form U-5. As we will set out below, we believe PSB is incorrect on this issue concerning both statutory law and case law.

PSB maintains the filing of the Form U-5 is absolutely privileged. PSB cites other instances of absolute privilege. See *Jarvis v. Drake*, 250 Kan. 645, 830 P.2d 23 (1992) (attorney discipline proceedings); *Schulze v. Board of Education*, 221 Kan. 351, 559 P.2d 367 (1977) (school board); *Clear Water Truck Co. v. M. Bruenger & Co. Inc.*, 214 Kan. 139, 519 P.2d 682 (1974) (Interstate Commerce Commission); *Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972) (administrative board); *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 476 P.2d 966 (1970) (administrative board); *Ellis v. Isoray Medical,*

*Inc.*, 2008 WL 3915097 (D. Kan. 2008) (unpublished opinion) (unemployment compensation).

PSB argues that because of the Form U-5's compulsory nature, its role in the NASD's quasi-judicial process, and with the protection of public interests in mind, the courts in New York have concluded that statements made by an employer on the form should be subject to an absolute privilege. See *Rosenberg v. MetLife, Inc.*, 493 F.3d 290 (2d Cir. (N.Y.) 2007); *Pierre v. JP Morgan Chase Bank*, 2008 WL 3157330 (S.D.N.Y. 2008) (unpublished opinion); *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 866 N.E.2d 439, 834 N.Y.S.2d 494 (2007); *Barclays Capital Inc. v. Shen*, 857 N.Y.S.2d 873, 20 Misc. 3d 319 (2008). However, this position is clearly the minority.

The majority of courts addressing the issue of whether statements on arbitration Form U-5 are privileged have held that statements on Form U-5 are entitled only to a qualified privilege. See *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158 (7th Cir. (Ill.) 1998); *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132 (6th Cir. (Tenn.) 1996); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 708 (7th Cir. (Ill.) 1994) ("the [employer] has a qualified privilege to defame the employee on the U-5"); *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 516 (2d Cir. (N.Y.) 1991) (employer's statements on amended Form U-5 were subject to qualified privilege); *Boxdorfer v. Thrivent Financial for Lutherans*, 2009 WL 2448459 (S.D. Ind. 2009) (unpublished opinion); *Shanklin v. Columbia Management Advisors, L.L.C.*, 2008 WL 4899631 (S.D. Tex. 2008) (unpublished opinion); *Wietecha v. Ameritas Life Ins. Corp.*, 2006 WL 2772838 (D. Ariz. 2006) (unpublished opinion); *Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F. Supp. 2d 247 (D. Conn. 2006); *Prudential Securities, Inc. v. Dalton*, 929 F. Supp. 1411 (N.D. Okla.1996); *Haburjak v. Prudential Bache Securities, Inc.*, 759 F. Supp. 293 (W.D.N.C. 1991); *Eaton Vance Distributors, Inc. v. Ulrich*, 692 So. 2d 915 (Fla. Dist. Ct. App. 2d Dist. 1997).

In 1995, Anne H. Wright, in Wright *Form U-5 Defamation*, 52 Wash. & Lee L. Rev. 1299, 1330 (1995), debated the issue of ab-

solute verse qualified privilege in the context of Form U-5 defamation and concluded with these words:

> "As the Seventh Circuit noted in *Baravati*, an absolute privilege is 'strong medicine,' and a compelling case has not been made for extending the privilege beyond the judicial and quasi-judicial context into the area of Form U-5 reporting, especially given the abuses that have sometimes occurred with respect to such reporting. Given the possibility of such abuses and the very serious damage that improper Form U-5 reporting can do to individuals' business reputations and employment prospects, immunizing broker-dealers from all liability for defamatory Form U-5 statements would afford insufficient protection to the reputational interest of individuals employed in the securities industry. Any response to Form U-5 defamation concerns must balance these reputational interests, securities regulators' need for accurate and complete information about the movements of problem representatives, and broker-dealers' desire for protection against civil liability for good-faith errors in Form U-5 reporting. To achieve such a balance, Form U-5 statements should enjoy only qualified protection from defamation liability."

PSB argues the only way the arbitration panel could have awarded Moreland damages is if it disregarded what it claims to be Kansas' clear controlling law of absolute immunity and all of Moreland's claim should have been dismissed except for the expungement. PSB contends that all statements made and collected in the FINRA process which relate to the proceeding are absolutely immune from claims flowing from the statements, including defamation, libel, and invasion of privacy.

We disagree and side with the majority of the courts addressing this issue. We hold the statements by PSB in the Form U-5 were entitled to a qualified privilege at most, both under case law, and even more importantly, under Kansas statutory law.

A qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication. *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986). Further, " '[w]here a defamatory statement is made in a situation where there is a qualified privilege the injured party has the burden of proving not only that the statements were false, but also that the statements were made with actual malice—with actual evil-mindedness or specific intent to injure.' " *Turner*, 240

Kan. at 8 (quoting *Munsell v. Ideal Food Stores,* 208 Kan. 909, 920-21, 494 P.2d 1063 [1972]).

Moreland argues PSB's motion to vacate must be denied because the arbitration panel could have imposed liability on PSB and awarded damages on any of his claims. Moreland cites *Dunn,* 2007 WL 2767997. However, *Dunn* does not involve the claims of privilege as in the present case. Rather, *Dunn* involved an investor suing an investment firm for making untrue statements or omissions of material fact in conjunction with the sale of securities in a retirement account. The Dunns claimed violations of the Kansas Securities Act and the Kansas Consumer Protection Act, common-law fraud, negligence, negligent misrepresentation, and breach of fiduciary duty. The arbitrator awarded the Dunns only $10,000, and they contended the arbitrator manifestly disregarded the law by not awarding damages pursuant to the Kansas Securities Act. The arbitrator's award was silent on its method of calculation, and the *Dunn* court held:

"It is possible the arbitrator's award in this case was based upon a finding the defendants violated the Kansas Securities Act, thus requiring an award of damages under the Act's mandatory damages provision. We need not vacate the award, however, because it is equally possible the award may have been based upon at least three other grounds asserted by the Dunns which did not encompass their claim under the Securities Act. As such, the Dunns have failed to demonstrate the arbitrator manifestly disregarded the law in calculating damages, and we conclude the district court did not err in confirming the award." 2007 WL 2767997, at *7.

Moreland compares the arbitration award in this case to the functional and legal equivalent of a general jury verdict. Consequently, the arbitration award is valid as long as it is legally supportable on any one of the submitted grounds. See *Griffin v. United States,* 502 U.S. 46, 48, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991); *Black v. Don Schmidt Motor, Inc.,* 232 Kan. 458, 474, 657 P.2d 517 (1983). Moreland argues the arbitration panel identified no single basis for its monetary award and that it strains logic and reason to contend that the panel's specific mention of the defamatory language in the Form U-5 compels a conclusion that the panel silently rejected all of Moreland's remaining claims.

The arbitrators are under no requirement to explain the award. See *Griffith*, 36 Kan. App. 2d at 500 (an arbitration panel is not required to set forth the reasons for its award citing *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.6 [10th Cir. [Kan.] 2001]). When an arbitration panel does not give its reasons for the award, such as here, determining manifest disregard becomes nearly impossible. See *Willemijn Houdstermaatschappij, BV v. Standard Micro*, 103 F.3d 9, 12-13 (2d Cir. (N.Y.) 1997); *O.R. Securities v. Professional Planning Assoc.*, 857 F.2d 742, 747 (11th Cir. [Ga.] 1988). He contends that a high percentage of arbitration awards do not contain an explanation of the decision. Moreland contends that even without the defamation claim, there was substantial evidence to support a monetary award on the basis of any of the other legal theories relied upon in his claim.

In *Griffith*, 36 Kan. App. 2d 494, Griffith filed an arbitration claim with the National Association of Securities Dealers (NASD) against McGovern and his investment firm arguing that she was defrauded when she lost money after switching from certificates of deposit to stocks and bonds. Griffith claimed violations of the Kansas Securities Act, negligence, breach of contract, violation of NASD and Exchange Rules, and breach of fiduciary duty. An arbitration panel granted an award of $3,000 in compensatory damages to Griffith. The district court denied the motion to vacate.

The *Griffith* court rejected Griffith's claims of failure to disclose and fraud of one of the arbitrators concerning an unsatisfied judgment and previous litigation. 36 Kan. App. 2d at 497-98. In addition to these claims, Griffith alleged that the arbitration panel irrationally and manifestly disregarded the Kansas Securities Act and that the award should have been vacated. Griffith claimed $213,340 in damages, but the arbitrators awarded $3,000 without disclosing the manner of their calculation. After citing the principle that arbitrators are not required to give reasons for the award, the *Griffith* court held as follows:

"As the district court noted, the arbitrators may or may not have considered the Kansas Securities Act in determining Griffith's damages. Nevertheless, the burden was upon Griffith to prove a basis for setting aside the award. Because the arbitration panel did not make any statements regarding the law, Griffith cannot show

the arbitration panel manifestly disregarded the Kansas Securities Act. Accordingly, the district court did not err by finding the arbitration panel did not manifestly disregard the law." 36 Kan. App. 2d at 500.

Moreland argues the arbitration panel heard and rejected PSB's claim that the Form U-5 was subject to absolute privilege and now PSB dresses up its argument in the guise of a claim that the panel's decision was in manifest disregard of the law. Moreland makes this claim based on the arbitration panel's statement that it had considered all the pleadings, testimony, and evidence and after granting Moreland an award stated: "Any relief not specifically enumerated, including punitive damages and attorneys' fees, is hereby denied with prejudice."

The arbitrators would seem to have clearly considered PSB's claims of privilege in rendering their decision. The district court stated: "The award states that the panel considered the claims made by the parties, including privilege. . . . While the term 'privilege', whether qualified or absolute, was not used in the award, there is no indication that the arbiters had complete indifference to the law." PSB has the burden to prove a basis for setting aside the award. Because the arbitration panel did not make any statements regarding the law, PSB cannot show the arbitration panel manifestly disregarded the law of privilege.

The court in *Van Pelt v. UBS Financial Services, Inc.*, 2007 WL 2997598, (W.D.N.C. 2007) (unpublished opinion), considered employment, privilege, and arbitration facts under Form U-5 and FINRA similar to the case at bar. The *Van Pelt* court held:

"A party making a claim based on manifest disregard shoulders a heavy burden. A panel's interpretation of the law will not be reversed unless there is a clear showing that the panel understood the law and chose to ignore it. A court's belief that the law has been misapplied 'does not justify vacation of the arbitral award.' *Remmey*, 32 F.3d at 149. The Court finds nothing on the face of the award which would show that the panel was aware of the law, understood it correctly, and found it applicable to the case, and yet chose to ignore it in the decision. At best, the award of compensatory damages and finding of defamation is ambiguous. Since the panel was silent as to its reasoning for the compensatory damages, UBS cannot meet its burden of showing that the panel manifestly disregarded the law, and the award cannot be vacated on this ground." 2007 WL 2997598, at *5.

*Kansas Statutory Law Concerning Absolute and Qualified Privilege*

The parties and the district court focused on the case law in this area, and after consideration of their arguments and the court's ruling, we have determined that only a qualified privilege is due to PSB under that case law.

However, our own post-oral argument research has convinced us that there is also a statutory basis for this position.

K.S.A. 17-12a507 reads:

"A broker-dealer, agent, investment adviser, federal covered investment adviser, or investment adviser representative is not liable to another broker-dealer, agent, investment adviser, federal covered investment adviser, or investment adviser representative for defamation relating to a statement that is contained in a record required by the administrator, or designee of the administrator, the securities and exchange commission, or a self-regulatory organization, unless the person knew, or should have known at the time that the statement was made, that it was false in a material respect or the person acted in reckless disregard of the statement's truth or falsity."

This is apparently taken from § 507 of the Uniform Securities Act. See Uniform Securities Act (U.L.A.) § 507, pp. 156-58 (2006).

It would appear the Kansas Legislature took the bull by the horns and the bear by the paws and statutorily set the level of immunity at "qualified" for these kinds of situations.

PSB was afforded a full and fair opportunity to present to the arbitration panel its argument that the statement that it placed on the Form U-5 was not actionable because it was subject to an absolute, if not qualified, privilege. The statutory grounds for vacating an arbitration award permit challenges on sufficiently improper conduct in the course of the proceedings; they do not permit rejection of the panel's award based on disagreement with the particular result the arbitrators reached. Accordingly, parties are not entitled to a second bite at the apple simply because they desire a different outcome. Such a result would transform a binding arbitration process into a purely advisory step in the litigation process. The arbitration panel considered PSB's arguments, including privilege, and implicitly rejected them. We conclude the arbitrators did the job they were told to do, and PSB has failed to show that

the arbitrators failed to consider PSB's claim of privilege or manifestly disregarded the law.

PSB also argues the district court erred in granting Moreland's motion for sanctions and attorney fees against PSB. We agree.

The standard of review in these matters was clarified by our Supreme Court in *Evenson Trucking Co. v. Aranda*, 280 Kan. 821, Syl. ¶ 1, 127 P.3d 292 (2006): "When an appellate court reviews a district court's decision to impose sanctions under K.S.A. 2004 Supp. 60-211, its function is to determine whether substantial competent evidence supports the trial court's findings of fact that the statutory requirements for sanctions are present." In *Vondracek v. Mid-State Co-Op, Inc.*, 32 Kan. App. 2d 98, 104, 79 P.3d 197 (2003), the court noted the sanction under K.S.A. 2002 Supp. 60-211 "is generally utilized when a party files a claim based upon a legal theory that is clearly contrary to statute or case law."

The factors to be considered in determining an appropriate sanction under K.S.A. 60-211 are enumerated as follows:

"(1) whether the improper conduct was willful or negligent;

"(2) whether it was part of a pattern of activity or an isolated event;

"(3) whether it infected the entire pleading or only one particular count or defense;

"(4) whether the person has engaged in similar conduct in other litigation;

"(5) whether it was intended to injure;

"(6) what effect it had on the litigation process in time or expense;

"(7) whether the responsible person is trained in the law;

"(8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and

"(9) what amount is needed to deter similar activity by other litigants. [Citation omitted.]" *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000).

The district court considered a postaward letter sent to Moreland stating:

"We've reviewed the opinion of the arbiter panel, and we've decided to challenge the decision in the courts. In light of the substantial cost of appeal, I've recommended that an effort be made to resolve this matter without judicial challenge. If your client has any interest in the alternative, please let me know."

The district court found $750 in attorney fees to be in order and awarded those to Moreland. The journal entry awarding the attorney fees states: "The Court does not like the manner that the No-

vember 13, 2008 offer of settlement letter was written by counsel for Perkins, Smart & Boyd to counsel for Jack W. Moreland." The judge explained his ruling further at the hearing on the motion to alter or amend and the perceived purpose of the November 13, 2008, letter:

> "The purpose is - - It wasn't for the reason that it was a settlement. It was basically a threat as I saw it. The record will speak for itself. If the litigation was continued, the defendant was going to make it as costly as possible for the plaintiff. . . . It's not clearly an offer of compromise. That letter was primarily an offer saying either take it or we're going to make your life miserable."

The district court's journal entry on the motion to amend states: "The Court does not find that the letter from Perkins, Smart & Boyd's counsel to Jack W. Moreland's counsel as clearly an offer of compromise, but rather finds it to be an admission of Perkins, Smart & Boyd's obligation to pay the October 20, 2008, Arbitration Award and refusal to pay."

PSB argues that it is being penalized for appealing the arbitration award and what it contends is a legitimate challenge to the defense of absolute immunity for quasi-judicial proceedings. PSB contends the district court did not analyze the nine-part test enunciated above. Moreland states that PSB did not raise the failure to discuss the nine-part test in the district court and should be precluded from raising it on appeal.

We find the letter could not be considered a naked threat sent only for the purpose of being an unreasonable threat to cause Moreland extra in litigation costs. PSB simply stated that it believed it had grounds for an appeal and asked if a settlement was possible.

While we have ruled in favor of Moreland on all issues, PSB's arguments are not frivolous. We agree with the district court's analysis that PSB's case for appeal was weak. Had PSB, the district court, or the arbitration panel noted the devastating impact of K.S.A. 17-12a507 on what was PSB's only real appealable issue, we might give more credence to the district court's and Moreland's position. However, absent this statute, PSB was able to argue with fairly good authority that it *was* entitled to absolute privilege which would have allowed it to checkmate the arbitrators' award. Until that possibility was shown to be without basis, PSB's intention to

appeal could not be fairly categorized as the kind of behavior that should incur sanctions. We therefore vacate the attorney fee award.

Affirmed in part and vacated in part.

\* \* \*

LEBEN, J., concurring: I express no opinion regarding the debate that has been waged in courts of other states about whether absolute or qualified immunity applies when a securities broker fills out the U-5 form that the Financial Industry Regulatory Authority (FINRA) requires when an agent leaves the broker's employment. Those courts were deciding a policy question that their legislature did not answer. But our legislature has answered the policy question, so we need only follow its directive.

K.S.A. 17-12a507 provides that a broker-dealer is not liable to an agent for defamation contained in a record required by a self-regulatory organization like the Financial Industry Regulatory Authority (FINRA) unless actual malice (knowledge of falsity or reckless disregard) is shown. That statute comes from section 507 of the Uniform Securities Act (2002), which Kansas adopted in 2004 and made effective July 1, 2005. L. 2004, ch. 154, sec. 36. The official comments to section 507 of the uniform act note that this section was based on a proposal from FINRA's predecessor, the National Association of Securities Dealers, which sought specifically to provide for qualified immunity for its forms U-4 and U-5. See Uniform Securities Act (U.L.A.) (2000), § 507, Official Comments, pp. 156-57 (2006). Our case involves form U-5. Thus, the language of K.S.A. 17-12a507 clearly provides for only qualified immunity, and the history of section 507 of the Uniform Securities Act (2002) shows that this immunity provision applies to the very form at issue in our case.

The parties argued the immunity issue to the arbitrators, and the arbitrators heard the testimony that the parties wanted to present under both the employer's claim of absolute immunity and the former agent's claim of qualified immunity. The arbitrators are not required to explain their decision, and they could have concluded from the evidence that the employer here acted with actual malice. Under that finding, PSB would be liable even though it had qual-

ified immunity. Thus, we are unable to conclude that the arbitrators acted in manifest disregard toward the law, and we cannot set aside the arbitration award. On this basis, I concur with the majority on resolution of the main issue in this case.

As to the district court's sanction award under K.S.A. 60-211, Perkins, Smart & Boyd's counsel candidly admitted in oral argument that if the rules typically applied to arbitration awards were followed, this award could not be set aside unless absolute immunity applied to a party filling out the U-5 form. K.S.A. 17-12a507 clearly provides qualified, not absolute, immunity. So it would seem that there was no legal basis under which PSB's attempt to vacate the arbitrators' award was likely to succeed.

But K.S.A. 60-211 makes a legal position subject to sanction only when it is not warranted by some "nonfrivolous argument" for the modification or reversal of existing law. K.S.A. 60-211(b)(2). The district judge did not base his award on a violation of that standard. Instead, the only basis he gave for the award was that the judge did not "like the manner" in which a letter proposing settlement— sent from PSB's lawyer to Moreland's—was written. Based on that violation, the judge awarded "[s]ignificantly limited attorneys fees" of $750.

K.S.A. 60-211 does not authorize sanctions based upon the manner in which a letter proposing settlement is written: the statute applies to a "pleading, motion or other paper" called for under civil procedure rules. K.S.A. 60-211(a). While Moreland did suggest the imposition of fees based on his claim that the motion to vacate the arbitrator's award itself was frivolous, the district court concluded only that the law was "pretty clear" despite perhaps "a little bit of uncertainty."

In my view, it's a close question whether the sanction award might be upheld on the basis that the entire attempt to vacate the arbitrator's award was frivolous. When the law truly is clear and a party opposes confirmation of an arbitrator's award in bad faith, sanctions under federal Rule 11, the federal counterpart to K.S.A. 60-211, have been upheld. See *Prospect Capital Corp. v. Enmon*, 2010 WL 907956, at *7 (S.D.N.Y. 2010) (unpublished opinion) (citing cases).

In making that judgment in this case, however, we must consider the importance of the privilege that PSB sought to uphold. After all, much of the regulation of financial markets is done—under the authority of federal law—by FINRA, the entity to whom these forms were submitted. See 15 U.S.C. § 78o-3 (2006); *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 366-67, 866 N.E.2d 439, 834 N.Y.S.2d 873 (2007).

Assuming the arbitrators followed the law, they determined that Kansas grants a qualified privilege to brokers filling out U-5 forms but that PSB acted with actual malice in completing the form. While arbitrators generally do not have to explain their rulings, I do not believe it was frivolous to argue in the factual circumstance before us that arbitrators should at least be required to show that they have followed the state's privilege law in their ruling. Given the importance of this privilege to the regulation of our financial markets and the importance of that task, I conclude that PSB's arguments to enforce at least a qualified privilege for statements made on required FINRA forms were nonfrivolous under K.S.A. 60-211. On that basis, I agree with the majority that the district court's sanction award should be vacated.