(287 P.3d 933)
No. 106,660

HEARTLAND SURGICAL SPECIALTY HOSPITAL, LLC, *Appellant*, v.
WILLIAM O. REED, JR., M.D., *Appellee*.

—

Opinion filed October 19, 2012.

*Jerry D. Hawkins* and *Randy J. Troutt*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellant.

*Greg T. Spies* and *David S. Lockett*, of McDowell, Rice, Smith & Buchanan, P.C., of Overland Park, for appellee.

Before McANANY, P.J., HILL, J., and BUKATY, S.J.

BUKATY, J.: Heartland Surgical Specialty Hospital, LLC (Heartland) filed a motion in the district court to vacate an arbitration award against it in favor of William O. Reed, Jr., M.D. The court denied the motion and confirmed the award. Heartland appeals, arguing that the court erred in its ruling because Heartland was denied an evidentiary hearing during the course of the arbitration and the arbitrator engaged in ex parte contact with Reed's counsel that should result in vacating the award. We first conclude that under the rules of arbitration the parties agreed would apply, the arbitrator had discretion whether to set a hearing or dispose of the case otherwise and, under the facts present here, both parties had sufficient opportunity to present their evidence and arguments. We next conclude that any contact between the arbitrator and defendant's counsel did not corrupt the process to the point that the award should be vacated. We therefore affirm.

Prior to the arbitration proceedings, Heartland and Reed had been involved in litigation apparently over compensation for administrative services that Reed claimed was owed to him. The parties settled that suit and entered into an agreement on July 31, 2009. A portion of that agreement contained a restrictive covenant that prohibited Reed from competing with Heartland in the future. In part, the relevant clause stated:

"Dr. Reed shall not, either directly or indirectly, for a period of five years following the execution of this agreement, and within 25 miles of [Heartland] accept em-

ployment with, acquire an ownership interest in, provide consulting or administrative services for, or participate in the development of any hospital or ambulatory surgery center."

The agreement also provided that Reed would refrain from " 'knowingly engag[ing] in any ownership venture or participat[ing] in any administrative service with [Dr. Glenn Amundson or Dr. Alexander Bailey] in violation of this agreement.' " Reed was required to provide an annual written attestation to Heartland to show that he was in compliance with this noncompete clause. The agreement also specified that Reed would pay the amount of $792,500 in liquidated damages in the event he breached the agreement. Finally, the agreement also contained a binding arbitration clause which declared:

*"Binding Arbitration.* Any controversy, dispute or disagreement arising out of or relating to this Agreement, including the breach thereof or the subject matter thereof, shall be settled exclusively by binding arbitration, which shall be conducted in Overland Park, Kansas, in front of a single arbitrator in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Procedural rules for Arbitration. Arbitration shall be binding not only on all parties to this Agreement, but on any other entity controlled by, in control of or under common control with a party to the extent that such affiliate joins in the arbitration and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof. Kansas law shall govern and *the parties waive their right to appeal the ultimate decision of the arbitrator. . . ."* (Emphasis added.)

Sometime after the parties entered into the agreement, Reed formed Elite Hospital Management, LLC (EHM) with Drs. Amundson and Bailey. In February 2010, EHM submitted a proposed management agreement to Heartland. Under the proposed agreement, EHM would have replaced Heartland's current administration and would have assumed control of Heartland's operations. On March 9, 2010, Heartland rejected EHM's proposal.

On March 10, 2010, Heartland filed a claim in arbitration, which alleged in part that Reed had breached the noncompete clause of the settlement agreement. The arbitrator, Jeffrey O. Ellis, was appointed, and on June 11, 2010, he held a preliminary hearing where he made some procedural rulings. In addition, the arbitrator scheduled a follow-up conference to "consider whether further discovery or preliminary matters need to be undertaken" or "whether the

case is in a position to be submitted for decision." On June 15, 2010, the arbitrator apparently had an 18-minute ex parte telephone call with Reed's counsel. Heartland was put on notice of the ex parte communication because of a fee statement submitted by the arbitrator shortly thereafter that included charged time for the telephone call.

Instead of filing an answer to Heartland's arbitration claim, Reed filed a motion to dismiss on June 28, 2010. He attached to the motion affidavits from Reed and Bailey that described EHM's operations. The motion stated that it was filed "per the Arbitrator's instructions." Heartland filed its responses to the motion on August 3, 2010. On August 10, 2010, Reed filed his reply to the responses. On October 13, 2010, the arbitrator, without conducting an evidentiary hearing, dismissed all but one of Heartland's arbitration claims for failure to state a claim for which relief could be granted. His written decision stated in part:

> "As arbitrator, I have evaluated each of [Heartland's] claims summarized above to determine whether [it] has stated a claim for which relief can be granted. Assuming the facts as alleged by [Heartland] to be true, and without regard to any evidence offered by Dr. Reed, [Heartland] has not stated a claim for which relief can be granted arising out of Dr. Reed's involvement with [EHM]. . . . [Heartland], therefore, is not entitled to discovery on those matters, and it is appropriate for the arbitrator to issue a final ruling on those matters."

This ruling had the effect of dismissing all but one of Heartland's claims, leaving in the case only the claim that Reed had breached the noncompete clause of the settlement agreement. In regard to that claim, the arbitrator stated:

> "Insofar as the First Amended Petition alleges Dr. Reed currently is employed by or providing consulting or administrative services to a hospital operating within a 25 mile radius of [Heartland's] facility, [Heartland] has stated a claim for which relief may be granted. [Heartland], therefore, may pursue discovery on the *limited* issue of whether Dr. Reed has been employed by or provided specific services to one of the hospitals identified in the First Amended Complaint since executing the Agreement."

The arbitrator then stated that the arbitration would remain open for 30 days so that Heartland could conduct discovery and submit additional evidence. He further noted that "should [Heart-

land] decide to not pursue this matter further and not produce additional evidence on the limited issue identified . . . on or before November 12, 2010, this arbitration shall be declared closed and this letter shall serve as the final award in this matter."

Instead of conducting further discovery or producing additional evidence as allowed in the arbitrator's ruling, Heartland sent a letter to the arbitrator on November 12, 2010, requesting that he reconsider his ruling. The letter also requested that the arbitration be dismissed without prejudice or, in the alternative, that a different arbitrator be appointed. On November 29, 2010, the arbitrator denied all of Heartland's requests.

Heartland next filed a motion to vacate the arbitration award in the district court. The court denied the motion and confirmed the award. The court first found that it had no jurisdiction to review the arbitration proceedings because both parties had agreed to waive "their right to appeal the 'ultimate decision' of the arbitrator." Nevertheless, it appears the trial court went on to address the merits of Heartland's arguments and ruled that it was not entitled to an evidentiary hearing during the arbitration and the alleged ex parte contact of the arbitrator with defense counsel did not provide grounds for vacating the award.

*Did the Parties Contractually Waive Their Right to Appeal the Arbitrator's Decision?*

Before we address the merits of Heartland's allegations on appeal, we must first determine if the district court correctly ruled that the parties had waived their right to appeal the award.

As we stated earlier, the parties' settlement agreement contained the phrase "the parties waive their right to appeal the ultimate decision of the arbitrator." Reed argues that Heartland's appeal must fail because both parties mutually agreed to waive judicial review of the arbitration decision by these terms. Conversely, Heartland argues that neither party waived its right to seek district court review based on the grounds set forth in K.S.A. 5-412(a).

At the same time, Heartland concedes that it waived the right to appeal the substantive findings of fact and conclusions of law under the terms of the settlement agreement. We agree. See *City*

*of Coffeyville v. IBEW Local No. 1523*, 270 Kan. 322, 336, 14 P.3d 1 (2000) (As long as the arbitrator's errors are not in bad faith or so gross as to amount to affirmative misconduct, the appellate court is bound by the arbitrator's findings of fact and conclusions of law.). Instead, Heartland maintains that Kansas public policy prevents parties from contractually waiving their right to appeal arbitration rulings for the reasons recited in K.S.A. 5-412(a). In the alternative, Heartland maintains that even if parties may contractually waive their right to appeal arbitration rulings under K.S.A. 5-412(a), Heartland did not waive its appeal rights under the facts in this case.

"The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. [Citation omitted.] Regardless of the district court's construction of a written contract, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900-01, 220 P.3d 333 (2009).

Generally, courts have taken two different approaches in determining if parties may, by contract, waive their right to seek judicial review of an arbitration decision. Under the first approach, courts have held that parties may eliminate judicial review of an arbitration award by contract, but their intention to do so must be stated clearly and unequivocally. See *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001); see also *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 828 (10th Cir. 2005) (citing *Dept. of Air Force v. Fed. Labor Relations Auth.*, 775 F.2d 727, 733 [6th Cir. 1985]; *Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 [9th Cir. 1973]).

Under the second approach, courts have held that public policy prohibits parties from contractually eliminating judicial review of some but not all aspects of an arbitrator's decision. See *Silicon Power v. General Elec. Zenith Controls*, 661 F. Supp. 2d 524 (E. D. Pa. 2009); *Barsness v. Scott*, 126 S.W.3d 232, 238 (Tex. App. 2003) (holding that a "no appeal" provision in an arbitration agreement did not preclude review of a judgment for reasons of fraud, misconduct, gross mistake, or those grounds for vacature or mod-

ification listed in the Texas Arbitration Act); *Circle Zebra Fabricators, Ltd. ex rel. Circle Zebra Management, L.L.C. v. Americas Welding Corp.*, Nos. 13-10-00504-CV, 13-10-00591-CV, 2011 WL 1844443, at *6 (Tex. App. 2011) (unpublished opinion) (" 'A "binding, final, and non-appealable" arbitral award . . . simply means the parties have agreed to relinquish their right to appeal the merits of their dispute; it does not mean the parties relinquish their right to appeal an award resulting from an arbitrator's abuse of authority, bias, or manifest disregard of the law.' "), *rehearing denied* (2011). Essentially, this approach then allows waiver of judicial review of the merits of an arbitration decision but not a waiver of a review which is sought on grounds of corruption, fraud, misconduct, partiality, and similar theories regardless of whether the parties contractually agreed to waive such review. The rationale here generally is that allowing judicial review under these limited circumstances protects the integrity of arbitrations.

Neither party has cited nor are we aware of any Kansas case that has upheld a clause in an agreement to arbitrate that waived all judicial review of an award regardless of the reasons the review was sought.

Heartland contends that it should not be barred from seeking judicial review of the award based upon any of the limited grounds identified under K.S.A. 5-412(a):

"Upon application of a party, the court shall vacate an award where:
(1) The award was produced by corruption, fraud or other undue means;
(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;
(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405, as to prejudice substantially the rights of a party; or
(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 and the party did not participate in the arbitration hearing without raising the objection."

Heartland's argument is persuasive. Permitting judicial review of an arbitration decision for reasons of corruption, fraud, evident

partiality, and the other circumstances listed in K.S.A. 5-412(a), even when the parties have attempted to waive such, helps ensure that the arbitration decision is reached fairly. To uphold a waiver of judicial review even when it is sought for these reasons could result in an arbitration decision being procured by bribery, corruption, or fraud without providing redress to an aggrieved party. It likewise could result in no redress for an aggrieved party when an arbitrator has exceeded his or her powers, refused to hear evidence, or shown a manifest disregard of the law. See K.S.A. 5-412(a); *Griffith v. McGovern*, 36 Kan. App. 2d 494, 499, 141 P.3d 516 (2006) (manifest disregard of the law). Not allowing parties to appeal to a court under these circumstances undermines the rationale behind and the justification for the arbitration process. In short, we conclude that in order to ensure the integrity of the arbitration process, Kansas public policy must allow parties to seek judicial review of arbitration awards under the limited circumstances set forth in K.S.A. 5-412(a) regardless of a clause in their arbitration agreement which waives such review.

We are mindful that

" '[i]t is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. . . . [T]he paramount public policy is that freedom to contract is not to be interfered with lightly.' [Citations omitted.]" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005).

Also, Kansas favors the arbitration process as an alternative to the judicial process. Generally, when a party consents to arbitration, it trades the judicial procedures and rules of the courtroom for a simpler, more informal, and more expeditious process. Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of upholding the award. Kansas courts must exercise immense caution when asked to vacate an arbitration award. Because a focal purpose of arbitration agreements is to avoid the expense and delay of court proceedings, judicial review of an arbitration award is very narrowly limited. See *Moreland v. Perkins, Smart & Boyd*, 44 Kan. App. 2d 628, 635-36, 240 P.3d 601 (2010).

Nevertheless, we agree with the cases that take the second approach set forth above and hold that public policy prohibits parties from contractually eliminating judicial review of all aspects of an arbitrator's decision. Arbitration loses its value if there is no protection for the integrity of its process. Is it realistic to assume parties in their right mind who have agreed to arbitrate disputes that might arise with another would agree that an arbitration decision against them will stand even when one of the factors set forth in K.S.A. 5-412(a) is present? We think not. A party victimized during an arbitration proceeding by bias or partiality to the other side, corruption, unfairness, and so forth should not be without a means of review even in the presence of a waiver clause contained in the agreement to arbitrate. The right of parties to contract does not trump this basic principle of fairness.

We might note at this point that even if we adopt the approach first set forth above that allows parties to contractually eliminate judicial review of all aspects of an arbitration award as long as their intention to do so is clear and unequivocal, we would still be compelled to find that the parties be allowed judicial review in this case. We have previously stated that Heartland has conceded that it waived its right to appeal the substantive findings and conclusions since it waived its right to appeal "the ultimate decision of the arbitrator." This language, however, does not clearly and unequivocally express an intention to waive the right to appeal on the basis of bias, corruption, fraud, or any other factors set forth in K.S.A. 5-412(a).

We will proceed to the merits of the appeal.

*The Necessity for a Hearing*

Heartland first argues that the district court erred when it held that Heartland was not entitled to an evidentiary hearing before the arbitrator reached his decision. Specifically, it maintains that the arbitration must be vacated because both K.S.A. 5-412(a)(4) and K.S.A. 5-405 require that the arbitrator hold an evidentiary hearing.

We first note our standard of review. K.S.A. 5-418(a) provides that a party to arbitration may appeal from an order confirming or

vacating an arbitration award but, as we stated in a prior context, that judicial review is very limited. *Moreland*, 44 Kan. App. 2d at 633, 636. The party seeking to vacate an arbitration award bears the burden of proving a basis for setting aside the award. *Griffith*, 36 Kan. App. 2d at 500. Indeed, a trial court must presume an arbitration award is valid unless there is proof of one of the specific grounds set forth in K.S.A. 5-412(a). *Moreland*, 44 Kan. App. 2d at 633.

K.S.A. 5-412(a)(4) states that the court shall vacate an arbitration award where "[t]he arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405, as to prejudice substantially the rights of a party." K.S.A. 5-405 states in pertinent part:

> "*Unless otherwise provided by the agreement*: (a) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail not less than five (5) days before the hearing . . . .
> "(b) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." (Emphasis added.)

Reed does not dispute that K.S.A. 5-412(a)(4) requires Kansas courts to vacate an arbitration award if the arbitrator(s) failed to conduct a hearing as provided under K.S.A. 5-405. Instead, he argues the latter statute does not mandate a hearing, it only provides a default rule that may be amended by the parties as was done here. He maintains that the parties waived any right to a hearing in their agreement to arbitrate. We agree.

The parties' settlement agreement stated that the arbitration would be conducted in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration (AHLA) (rev. June 2009). In reviewing those rules, it becomes clear that the arbitrator has discretion as to what, if any, hearings he or she will set. We start with section 4.01 of the AHLA. It reads in part:

"At the request of a party or at the discretion of the arbitrator, a preliminary hearing or a preliminary telephonic conference with the parties and/or their counsel and other authorized representatives and the arbitrator *may* be scheduled by the arbitrator to consider any matters that will expedite the arbitration proceedings. The arbitrator *may*, at the preliminary hearing or during the preliminary telephonic conference, establish (a) the extent of and schedule for the production of relevant documents and other information, (b) the identification of any witnesses to be called, (c) a schedule for discovery *or further hearings* to resolve the dispute, and (d) whether the award is to be a reasoned award." (Emphasis added.)

Nowhere in this rule, or in any other of the AHLA rules for that matter, does it state that the arbitrator must conduct an evidentiary hearing before he or she reaches a decision.

The lack of a mandatory hearing requirement is further evident when Section 4.01 is read in context with other sections in the AHLA procedural rules. For instance, Section 4.15 states:

"When satisfied that the record is complete, the arbitrator shall declare the hearing closed. If written statements are to be submitted, the hearing shall be declared closed as of the final date set by the arbitrator for such submission. *If there has been no hearing,* the arbitrator shall determine a fair and equitable procedure for receiving evidence and closing the proceeding." (Emphasis added.)

Section 4.08 also is instructive. It states that "[b]efore the start of the first hearing, *if any*, the arbitrator may take an oath of office. The arbitrator may require witnesses to testify under oath administered by the arbitrator or a duly qualified person." (Emphasis added.)

These foregoing sections, when read together, create a vivid inference that the AHLA procedural rules do not require an arbitrator to conduct an evidentiary hearing or any other type of hearing. Their language clearly contemplates that a hearing might never occur. Heartland has failed to show that it was entitled to receive an evidentiary hearing under the AHLA procedural rules.

Moreover, we find nothing unfair or prejudicial to Heartland in the process here that led up to the arbitrator's final award. Following a preliminary hearing on June 11, 2010, the arbitrator sent a scheduling letter to the parties, which apparently reflected an agreement of the parties. It also reflected that he would exercise his discretion in the future regarding the scheduling of further hearings. It stated:

"1. Counsel for [Heartland] will prepare a document in the nature of a petition or a complaint stating with specificity the allegations giving rise to its claim that Dr. Reed is in violation of the Covenant Not to Compete found at paragraph 5 of the Settlement Agreement. Said petition/complaint shall be submitted by counsel for [Heartland] by close of business Monday, June 14, 2010. Counsel for [Heartland] shall further issue their request for discovery concurrently with the presentation of the petition/complaint.

"2. Counsel for Dr. Reed shall answer [Heartland's] petition/complaint within 30 calendar days from June 14, 2010, and may issue a request for discovery from [Heartland] at that time.

"3. The parties will reconvene at 10 a.m. on July 27, 2010, for the purpose of determining whether the case is in a position to be submitted for decision by the arbitrator. The parties have agreed that there is no need for a 'reasoned decision.'

"4. At the next conference on July 27, 2010, we will reconsider whether further discovery or preliminary matters need to be undertaken and whether expedited procedures may be followed to submit the matter for decision. Should either party desire a discovery conference prior to the next scheduled hearing on July 27, they may do so by written request."

Because Reed filed a motion to dismiss instead of answering Heartland's petition, the arbitration proceedings did not follow this exact schedule. Nevertheless, Heartland was given an opportunity to respond to Reed's motion to dismiss and, in fact, did so on August 3, 2010. Then, on October 13, 2010, the arbitrator ruled that Heartland had failed to state a claim on all but one of the claims it had submitted to arbitration. Before the arbitrator issued a final ruling on that one remaining claim, it gave Heartland an additional 30 days to conduct discovery and submit additional evidence if it desired. Heartland has not offered a plausible reason why it failed to do so. It maintains that it should have been able to cross-examine Reed and other witnesses at an evidentiary hearing. The argument is unpersuasive because Heartland had ample opportunity to subpoena Reed and the other witnesses for a deposition during the 30-day period it was given to conduct additional discovery. Nor did Heartland ever request more time to accomplish this.

For these reasons, Heartland has failed to meet its burden to show that the trial court erred in finding that an evidentiary hearing was not required under the AHLA rules.

*The Allegation of Misconduct on the Part of the Arbitrator*

Heartland next argues the district court erred in not vacating the arbitration award under K.S.A. 5-412(a)(1) and (2) because the ex parte communication between the arbitrator and Reed's counsel constituted "undue means," partiality towards Reed, and misconduct, which prejudiced its rights. Reed counters that Heartland has failed to meet its burden to establish any basis for vacating the award under either of these statutory subsections. In the alternative, Reed argues that even if misconduct occurred, Heartland's argument still fails because the alleged misconduct was harmless and did not prejudice Heartland.

Again, we repeat our standard of review. Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of upholding the award. Kansas courts must exercise immense caution when asked to vacate an arbitration award. Because a focal purpose of arbitration agreements is to avoid the expense and delay of court proceedings, judicial review of an arbitration award is very narrowly limited. *Moreland*, 44 Kan. App. 2d at 635-36. The party seeking to vacate an arbitration award bears the burden of proving a basis for setting aside the award. *Griffith*, 36 Kan. App. 2d at 500. A trial court must presume an arbitration award is valid unless there is proof of one of the specific grounds set forth in K.S.A. 412. *Moreland*, 44 Kan. App. 2d at 633.

On this issue, Heartland relies on K.S.A. 5-412(a)(1) and (2) which require the court to vacate an arbitration award where "(1) The award was procured by corruption, fraud or other undue means; [or] (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party."

When determining if an arbitration award should be vacated for fraud, our court has stated:

"Fraud is not presumed, but must be established by clear and convincing evidence. [Citation omitted.] While an arbitration award may be attacked for fraud, the only type of fraud sufficient to overturn an arbitrator's award under K.S.A. 5-412(a)(1) is procedural fraud in the actual arbitration proceedings, such as the

arbitrator's exhibition of bias for or against one of the parties." [Citation omitted.] *Griffith*, 36 Kan. App. 2d at 498.

When determining if an arbitration award should be vacated because of evident partiality, our Supreme Court has stated: " 'The type of relationship which would appear to disqualify is one from which it may not be unreasonable to infer an absence of impartiality, the presence of bias or the existence of some interest on the part of the arbitrator in the welfare of one of the parties.' [Citation omitted.]" *Foley Co. v. Grindsted Products, Inc.*, 233 Kan. 339, 343, 662 P.2d 1254 (1983).

Clearly, the underlying theme behind these statutory provisions is that Kansas courts must vacate an arbitration award when an arbitrator has abandoned his or her neutrality and has exhibited bias for or against one of the parties.

Section 3.07 of the AHLA restricts ex parte contacts during arbitration proceedings, stating:

"***Ex parte* Communications**. Unless otherwise agreed by all of the parties or required by law, an arbitrator shall not discuss a case with a party or parties or a party or parties' counsel or other authorized representatives in the absence of another party or parties or the other party or parties' counsel or other authorized representatives. This restriction does not apply to discussions that relate solely to scheduling and do not involve any discussion of any other substantive or procedural facet of the arbitration."

Despite the arbitrator's denial that an ex parte contact occurred, the record contains what appears to be strong evidence that the arbitrator and counsel for Reed engaged in a phone call in which counsel for Heartland was not involved just before Reed filed his motion to dismiss. Heartland apparently became aware of the call shortly thereafter from an invoice sent to the parties by the arbitrator in which he itemized his time in the case. There apparently is nothing in the record that indicates exactly what was said during the call, but there was the notation on Reed's motion to dismiss which stated that the motion was filed "per the Arbitrator's instructions." Heartland argues this misconduct reveals bias and prejudice on the part of the arbitrator that should result in vacating the award.

It goes without saying that the arbitrator and Reed's counsel should not have engaged in any ex parte communications about what pleadings were to be filed or about any other similar subjects. Heartland argues then that there should be a strong presumption of prejudice sufficient to vacate the award. However, we are aware of no such presumption in Kansas law. Rather, when a party files a motion to vacate an arbitration award on grounds of improper ex parte communication, the party must advance proof that the ex parte communication " 'affected or played a part in the decision rendered by the arbitrators.' " *Foley*, 233 Kan. at 346 (arbitration award not procured by corruption, fraud, or other undue means where alleged ex parte communication did not affect arbitrator's decision).

Based on the relevant facts from the record which are undisputed, we fail to see that any ex parte communication affected the arbitrator's decision here. We reiterate that, initially, the arbitrator gave Heartland sufficient opportunity to respond to Reed's motion to dismiss and, in fact, Heartland did so. Then, in later dismissing all but one of Heartland's claims, the arbitrator assumed as true all the facts stated by Heartland in its pleadings without regard to any evidence offered by Reed and determined that Heartland had failed to state prima facie claims. He gave Heartland 30 days to conduct any further discovery or present any evidence it wished to on the one remaining claim. He further stated that if Heartland did not pursue the matter further, the arbitration would be deemed closed. Also, Heartland has not offered any plausible explanation as to why it never engaged in any further discovery or presented any additional evidence. In short, it has failed to establish how it was treated unfairly, how this award reflected any bias or prejudice on the part of the arbitrator, or in what manner the award would have ultimately been different had no contact occurred.

Also of note is the fact that Heartland apparently knew about the possibility that an improper ex parte contact had occurred when it received the arbitrator's invoice containing the reference to a telephone contact with Reed's counsel several months before the arbitrator issued the award. Yet Heartland did not raise the issue with the arbitrator until 30 days after the arbitrator made known

his decision to dismiss all but one of Heartland's claims. Nor did it take advantage of Rule 7.05 of the AHLA, which reads in pertinent part:

"If a dispute arises between or among the parties regarding a . . . matter in which the propriety of continued service by the arbitrator is challenged and such dispute cannot be resolved among the parties and the arbitrator, the Service, at its sole discretion, may resolve such issue, may remove the arbitrator and make another appointment based on the parties' stated preferences with respect to any list submitted to them, or may resubmit a new list."

This rule does not require that Heartland had to report the matter at any time or by any date before it could raise the issue on appeal. But Heartland's delay does indicate that perhaps it did not feel aggrieved by the arbitrator's conduct until it received the award.

. In summary, we conclude that any ex parte contact by the arbitrator with Reed's counsel did not corrupt the process or affect the substance of the award. The district court did not err in determining that this contact did not provide a basis for vacating the award.

Affirmed.