(239 P.3d 878)
No. 102,247

EARL E. KOPP and CAROLYN KOPP, *Appellants*, v. PAUL L. KOPP, *Appellee*.

Opinion filed September 24, 2010.

*Linus L. Baker*, of Stilwell, for appellants.

*R. Patrick Riordan*, of Riordan, Fincher & Munson, P.A., of Topeka, and *Grant M. Glenn*, of Woner, Glenn, Reeder, Girard & Riordan, P.A., of Topeka, for appellee.

Before CAPLINGER, P.J., MALONE and MCANANY, JJ.

MCANANY, J.: This appeal arises out of a dispute between brothers Paul and Earl Kopp over the terms of a contract for the sale of Blackbob Corners, a parcel of commercial real estate in Olathe.

Paul, the owner of Blackbob Corners, extended an option to purchase the property to Eagle Management and Investment Co. (Eagle). Eagle assigned its option to Earl and Earl's wife, Carolyn.

When Earl sought to exercise the option, Paul refused to honor it. Litigation followed. Eventually, the brothers participated in a settlement conference in which they appeared to have settled their differences. Earl, a licensed real estate broker, was to draft the settlement agreement in the form of a real estate contract. Earl prepared the agreement, but Paul disagreed with some of its terms.

The brothers were unable to reconcile their differences over the agreement, so Paul moved to enforce the settlement agreement. The district court determined that an agreement had been reached with respect to all material terms; and those material terms are contained in Earl's draft of the Contract For Purchase Of Real Estate, the Memorandum For Contract Of Sale, and a red-lined version of the contract. The court then resolved the nonmaterial discrepancies in a manner consistent with what the brothers contemplated at the time of their settlement. The court incorporated a copy of the agreement, as resolved by the court, into the court's journal entry and concluded that "the sale contract attached hereto reflects the agreement of the parties." The contract contained the following arbitration provision:

"25. ARBITRATION. If any part of this Agreement is disputed in any way, or there are any other disputes between the parties arising out of the subject property or any other matter, the parties agree to resolve such disputes by arbitration under the laws of the State of Kansas. If the parties can not agree to an arbitrator, then either party may request the Chief Judge of the Johnson County District Court to appoint an arbitrator. Prior to requesting the appointment of the Arbitrator, the party alleging breach of this Agreement by the other party shall have made written demand for compliance and the other party shall have had at least ten days to take the correcting action, unless such alleged breaching party refuses in writing to comply with the written demand. Each party shall tender one half of the first day's fees to the Arbitrator before the hearing commences, and meet any other requirements of the Arbitrator. The Arbitrator may award damages, equitable relief, the entire arbitrator's fees and costs (the same as what would be eligible to be court costs if it was [filed] in Court) to either party as part of the resolution of the matter. However, each party shall be responsible for paying its own attorney fees."

The contract also contained a provision in which both buyer and seller covenant, represent, and warrant that "[t]his Contract is a valid and binding agreement, enforceable in accordance with its terms."

Notwithstanding this covenant, representation, and warranty, the parties failed to carry out the terms of the settlement agreement embodied in the real estate contract. The dispute appears to center on provisions in the contract regarding the seller's obligation not to extend or modify the terms of any existing leases to tenants of Blackbob Corners without the written consent of the buyer. The provision in the real estate sales contract prohibits any such changes by the seller "following the execution of this Contract." Apparently, Earl was concerned that Paul had modified or extended, or intended to modify or extend, the leases of current tenants in a way that would detrimentally affect the rental income stream from the property.

Earl moved to compel arbitration. The court granted the motion and appointed an arbitrator. In doing so the court noted:

"The court does not determine whether the real estate contract embodied in the Order has been effectuated. The court notes that generally a commercial real estate contract is signed by the parties and thereafter the buyer provides an earnest money deposit to effectuate the same. In this case, the parties have neither signed the real estate contract and, more importantly, Plaintiffs have failed to provide the earnest money deposit. Despite this fact, Plaintiffs argued to the court that the contract became effective on the date of the Order. Defendant disagrees. A dispute has arisen between the parties with respect to the effective date of the real estate contract. Moreover, as revealed during the hearing, the parties have numerous disputes involving the real estate contract, its implementation, and the obligations of the parties thereunder."

The court made no mention of the fact that this was not a typical commercial real estate contract, but rather the embodiment of a settlement reached in a particularly hotly disputed matter that, on at least one occasion, required the presence of sheriff's deputies at a hearing because of threats of violence. Nevertheless, the court also observed:

"By ordering arbitration, the court is not suggesting that the real estate contract is effective as of the date of the Order. Rather, the court is merely recognizing the parties' prior agreement to submit any disputes to arbitration. Under the

arbitration clause, the Arbitrator shall determine the effective date of the real estate contract, if any, as well as all other disputes in this matter."

The court did not explain its reference to "the parties' prior agreement." It is unclear whether this refers to some agreement other than the settlement agreement embodied in the real estate contract that contains an arbitration provision. On appeal, the parties do not direct us to any agreement in the record other than the real estate sales contract which embodies the parties' settlement agreement.

The arbitrator issued a preliminary ruling. He observed that the district court "prepared the sale contract consistent with all of the terms of the settlement. This is the law of the case." Nevertheless, the arbitrator found that that the contract was not enforceable because it was not signed by the parties. In the final arbitration order, issued 4 months later after Earl moved for reconsideration, the arbitrator ruled, without explanation, that the real estate contract was "part" of the settlement. The arbitrator found that the contract would not come into being until it was executed by the parties.

Earl moved to vacate the arbitrator's decision. The court denied the motion, and Earl's appeal follows.

Earl raises two issues in this appeal which we paraphrase as follows: (1) did the district court err in assigning to the arbitrator an issue the court had already resolved—that the parties had a valid, enforceable agreement; and (2) did the district court err in affirming the arbitrator's award which found the agreement not to be enforceable, contrary to the district court's earlier ruling?

As a general rule, when the parties have agreed to submit disputes to arbitration, claims of errors of law and fact or an erroneous decision on matters submitted to the arbitrator are insufficient to invalidate an award fairly made. Nothing relating to the merits of the controversy in the award, even though incorrectly decided, is grounds for setting aside the award absent fraud, misconduct, or other valid objections. In addition, when an award made under the Kansas Uniform Arbitration Act, K.S.A. 5-401 *et seq.*, is attacked by one of the parties, it is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrator. An arbitrator's award ordinarily will not be subject to judicial re-

vision unless such award is tainted or based on an irrational interpretation of the contract. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 689, 751 P.2d 122 (1988).

Paul relies on the decision of a panel of this court in *Packard v. Credit Solutions of America, Inc.*, 42 Kan. App. 2d 382, 213 P.3d 437 (2009), to support his contention that it was proper for the arbitrator to determine whether the parties had a valid and enforceable agreement. *Packard* was resolved in reliance upon *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 163 L. Ed. 2d 1038, 126 S. Ct. 1204 (2006). Neither of these cases controls, given the distinctly different posture of the case now before us.

*Packard* involved a claim by clients against the debt reduction/ resolution service with which they had contracted. The plaintiffs claimed the defendant engaged in deceptive consumer transactions. The defendant moved for arbitration pursuant to the contracts signed by the parties. The plaintiffs resisted, claiming the contracts were void pursuant to the Kansas Consumer Protection Act. Whether the contract was illegal and therefore void and unenforceable turned on resolution of the validity of the very conduct that the plaintiffs challenged, which conduct was a proper issue for arbitration.

In *Buckeye*, which involved claims that a check-cashing business engaged in usurious and other illegal conduct, the Court was similarly called upon to decide "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." 546 U.S. at 442. The Court explained:

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. [Citation omitted.] The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. . . . [Here,] [t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." 546 U.S. at 444.

In a footnote, the Court observed:

"The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by the respondents (and by the Florida Supreme Court), which hold that it is for the courts to decide whether the alleged obligator ever signed the contract . . . . [Citations omitted]." 546 U.S. at 444 n.1.

Unlike in *Packard* and *Buckeye*, neither party here challenges the validity of the contract or its arbitration provision. Neither party contends that the other has engaged in some illegal conduct which thereby renders the contract illegal and unenforceable. The parties reached a settlement agreement. The court resolved some minor, nonmaterial disputed elements of the settlement agreement and found that the real estate contract attached to the court's journal entry memorialized the settlement agreement of the parties. In its later arbitration order, the court noted that the journal entry memorializing the settlement agreement "created" the contract between the parties. In *Packard*, the arbitrator was asked to determine if postcontracting deceptive consumer transactions voided the contracts. In *Buckeye*, the arbitrator was asked to determine if postcontracting usurious transactions voided the contract. Here, however, the arbitrator was not asked to determine whether conduct of a party after creation of the contract rendered it void and unenforceable. Neither *Packard* nor *Buckeye* controls.

This logically leads to Earl's first issue on appeal—whether the district court erred in assigning to the arbitrator an issue the court had already resolved: whether the parties had a valid, enforceable agreement.

In *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992), which was specifically cited with approval in *Buckeye*, the court determined that it was for the district court to determine whether there existed a contract in which the contracting parties agreed to submit disputes to arbitration. Thus, " 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.' " 957 F.2d at 854 (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 [1985]).

This is consistent with the Kansas Uniform Arbitration Act, K.S.A. 5-401 *et seq.* Arbitration is predicated upon the existence of an agreement to arbitrate. K.S.A. 5-401. "[I]f the [party opposing a motion to compel arbitration] denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." K.S.A. 5-402(a).

Here, the existence of an arbitration agreement had already been determined by the court when it memorialized the settlement agreement of the parties, which included the arbitration provision, in the court's revised real estate sales contract. As Paul acknowledges in his appellate brief, the court's order for arbitration stated that " 'the parties' voluntary agreement to arbitrate places directly before the Arbitrator all disputes involving the [September 12, 2006, journal entry] and the *real estate contract it created.*' " (Emphasis added.)

In submitting the issue of whether the parties had an enforceable contract, the court created an illogical feedback loop: (1) the parties have a valid contract which contains an arbitration provision; (2) pursuant to the arbitration provision in that enforceable contract, the parties must submit their disputes to arbitration; and (3) in that arbitration, the arbitrator must decide whether the parties have an enforceable contract.

The arbitration agreement is part of the settlement agreement. If the parties have no valid and enforceable settlement agreement, then the parties have no valid and enforceable agreement to arbitrate, and the court had no authority to order arbitration. However, there is no dispute that the parties entered into a settlement agreement which includes the arbitration provision. Unlike in *Packard* and *Buckeye,* neither party claims that the other party engaged in some conduct which voided the arbitration agreement they entered into.

The settlement agreement created a valid and enforceable contract. The fact that neither party signed the contract form that was revised by the court to memorialize the agreement of the parties is of no moment.

In *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 409, 166 P.3d 440, *rev. denied* 285 Kan. 1174 (2007), the court determined that "a signature is unnecessary when there is a court transcript providing the terms of the agreement and the oral assent of the party to be charged with the agreement that has been fairly stated on the record of that proceeding." The court also noted:

"As a leading contract treatise explains, the 'signature requirement should be held to be satisfied if the writing contains any sign or symbol identifying its maker so as persuade the court that there is no serious risk of fraud in the . . . allegation that the memorandum was made or adopted by the party charged.' 4 Corbin on Contracts § 23.4, at 788 [(rev. ed. 1997)]." 38 Kan. App. 2d at 409-10.

Here, in ordering arbitration the court specifically referred to the court's earlier journal entry of September 12, 2006, as "the Order and the real estate contract it created." There is no doubt that the court was satisfied that the parties had settled their differences in accordance with the terms of the contract incorporated into the court's order. The parties affirmed this finding by agreeing to arbitration pursuant to the agreement the court found they had made. Under the circumstances, the lack of signatures on the contract which embodies the settlement reached by the parties does not vitiate the agreement.

We stray from the appellate briefs of the parties only to consider a provision in the real estate sales contract which neither party mentions or discusses, but which we must address. The settlement agreement was drafted in the form of a typical real estate sales contract. The contract contains a number of standardized "boilerplate" provisions, including the following oft-found language preceding the signature lines: "Upon approval of the Contract by both Seller and Buyer, evidenced by their respective signatures hereto, a valid and binding contract of sale shall exist and be effective as of the date this Contract is last executed." We conclude that this provision does not require the parties to sign the document before a valid and enforceable contract is created, because:

- The court found otherwise when it found that a real estate contract had been created. Neither party has appealed from this conclusion.

- The arbitration agreement which the court enforced is contained only in the contract which was the product of the parties' settlement agreement. If the arbitration provision is valid and enforceable, the contract which contains it is too.
- The law favors settlements of litigated disputes. Settlements need not be in writing to be effective. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202, 785 P.2d 1367 (1990). The purpose of a negotiated settlement is to end the uncertainty of the prospective outcome, end the cost of litigation, and end the strife that attends a trial. We should, and do, construe settlements in a manner that effectuates these objectives. It is wholly at odds with these objectives to conclude that the parties did not reach a settlement, but rather reached an agreement that at some future date they might enter into a settlement, if they chose to do so, by signing the contract. They either had a deal or they did not. The district court found that they did.

We conclude that the district court erred in assigning to the arbitrator an issue the court had already resolved: the existence of a valid and enforceable agreement between the parties.

We turn to Earl's second claim of error: that the district court erred in affirming the arbitrator's award. Absent limited circumstances which do not apply here, the court was obliged to affirm the arbitrator's award if the arbitrator was acting within the scope of the arbitrator's authority. *City of Coffeyville v. IBEW Local No. 1523*, 270 Kan. 322, 336, 14 P.3d 1 (2000).

K.S.A. 5-411 requires the court to confirm an arbitrator's award unless a timely motion to vacate or modify is filed, in which case either K.S.A. 5-412 (vacating the award) or K.S.A. 5-413 (modifying the award) controls. Here, Earl moved to vacate the award, so we turn to K.S.A. 5-412, which provides five bases for vacating an award. Earl relies on K.S.A. 5-412 (3), as the basis that the arbitrator exceeded his power.

The arbitrator had the power to resolve disputes with respect to the parties' rights and obligations under the real estate sales contract which embodied the parties' settlement agreement. Notwithstanding the district court's directions to the contrary, the arbitrator

did not have the power to determine whether the contract (which was the basis for the arbitrator's power to act) was in force. As discussed earlier, that was a matter for the district court. In ruling on the enforceability of the parties' contract, the arbitrator exceeded his power. Accordingly, the district court erred in failing to vacate the arbitrator's award.

Reversed and remanded for further proceedings consistent with this opinion.