(284 P.3d 1057)
No. 106,536

NEIGHBORS CONSTRUCTION CO., INC., *Appellee*, v.
WOODLAND PARK AT SOLDIER CREEK, LLC, *Appellant, et al.*

34

Opinion filed August 3, 2012.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, for appellant.

*Thomas J. Fritzlen, Jr.*, of Martin, Leigh, Laws & Fritzlen, of Kansas City, Missouri, for appellee.

Before GREEN, P.J., MALONE and MCANANY, JJ.

GREEN, P.J.: Woodland Park at Soldier Creek, LLC (Woodland Park) appeals from the trial court's decision: (1) that denied Woodland Park's application to vacate or modify and correct arbitration; and (2) that confirmed an arbitration award in favor of Neighbors Construction Co., Inc. (Neighbors Construction) in the amount of $1,277,701.31. On appeal, Woodland Park makes the following arguments: (1) that the trial court misapplied the standard of review when it confirmed the arbitration award in favor of Neighbors Construction; (2) that the trial court erred when it confirmed the arbitration award because the arbitrator exceeded his statutory power; (3) that the trial court erred when it confirmed Neighbors Construction's attorney-fee award because the arbitrator relied on the wrong statute; and (4) that the trial court erred when it denied Woodland Park's motion to add the arbitration transcript to the record. We disagree. Accordingly, we affirm.

On May 17, 2007, Neighbors Construction entered into a standard form construction agreement with Woodland Park. The contract agreement was amended and signed by the parties on May 21, 2007. Under the agreement, Neighbors Construction was to serve as the general contractor for the Woodland Park at Soldier Creek multi-family housing project (project) located in Topeka, Kansas. Woodland Park was the owner of the project. The contract required Neighbors Construction to "fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others."

The contract, in part, contained the following terms: (1) that Neighbors Construction would receive $16,611,466 in compensation for performing the contract; (2) that Neighbors Construction would receive periodic progress payments as provided in the contract; and (3) that Neighbors Construction should achieve "substantial completion" of the entire work no later than 608 days from

the date of commencement. The contract also incorporated by reference the American Institute of Architects (AIA) Document A201, General Conditions to the contract for construction (1997 ed.) (General Conditions). Section 4.4 of the General Conditions, entitled "resolution of claims and disputes," contained several numbered paragraphs that explained the process the parties were to use if a dispute arose. Section 4.4.1 stated that claims

"shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration, or litigation . . . unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect."

Section 4.6 contained the arbitration procedures. Section 4.6.1 read as follows:

"Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived . . . shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5"

After the execution of the contract, Neighbors Construction began to perform and Woodland Park timely paid Neighbors Construction the first 19 progress payments. In Application 20R, Neighbors Construction requested a progress payment of $845,273.92. Woodland Park short-paid Application 20R by $200,000. On February 11, 2009, Neighbors Construction provided Woodland Park with notice that it intended to stop work on the project until it received payment. Neighbors Construction also submitted Application 21 to Woodland Park in the amount of $626,801.86, which included the unpaid balance of $200,000 from Application 20R. Woodland Park disputed Neighbors Construction's progress payment request for Application 21, disputed the $200,000 balance owed on Application 20R, and submitted a claim to the architect asking him to review all previous pay applications.

On March 25, 2009, the architect rescinded its certification of the $200,000 owed to Neighbors Construction under Application 20R. Neighbors Construction and its subcontractors then returned to the project and continued to work. At that time, however, Neigh-

bors Construction filed a demand for arbitration. Before the arbitration hearing, the architect certified Application 21 for payment, but he did not include the $200,000 from Application 20R in the certification. As of July 14, 2009, the architect had determined that Woodland Park owed Neighbors Construction $622,102.84. On July 31, 2009, Neighbors Construction told Woodland Park that it would stop work until the balance was paid. When Woodland Park failed to pay the $622,102.84, Neighbors Construction gave Woodland Park a notice of termination, as required under the contract, and the contract was terminated.

In June 2010, an arbitration hearing was held to settle the parties' payment dispute. At the hearing, Woodland Park argued that the architect's decision was final and binding on the parties absent fraud or gross mistake. Moreover, Woodland Park argued that the arbitrator must defer to the architect's decision, unless the evidence established that the architect committed fraud or gross mistake. The arbitrator, however, disagreed with Woodland Park and ruled that General Condition Section 4.4.1 did not make the architect's decisions final and binding on the parties but instead was merely a condition precedent to arbitration.

Following the hearing, the arbitrator issued his written decision. In his decision, the arbitrator found that "Woodland Park's repeated requests for [the architect] to reconsider its certifications of Neighbors' Applications 20R and 21 were part of a concerted attempt to create an excuse for non-payment." Thus, the arbitrator made the following findings: (1) that Woodland Park materially breached the contract by its nonpayment of $200,000 on Application 20R; (2) that Woodland Park's breach excused all further performance by Neighbors Construction; and (3) that because Neighbors Construction completed the project, it was entitled to recover the balance of the adjusted contract sum less the amount it would have cost Neighbors to complete or correct the work. The arbitrator then awarded Neighbors Construction $1,277,770.31, which included interest, costs, and Neighbors Construction's attorney fees.

On June 16, 2010, Neighbors Construction filed an application for confirmation of its arbitration award and entry of judgment in

Shawnee County District Court. In opposition, Woodland Park filed a response to Neighbors Construction's application and also filed an application to vacate or modify and correct the arbitration award. In its application, Woodland Park argued, in part, that the arbitrator erred when he failed to defer to the architect's decision, that the arbitrator exceeded his power, and that the arbitrator showed a manifest disregard for the law.

The trial court found that the architect's decision was not entitled to deference and that Woodland Park failed to prove that the arbitrator exceeded his power or showed a manifest disregard for the law. On May 31, 2010, Woodland Park filed a motion to alter or amend judgment. The trial court denied Woodland Park's post-trial motions.

*Standard of Review*

Initially, we must determine if the trial court used the appropriate standard of review. Woodland Park argues that the trial court erred when it applied a deferential standard of review to the arbitrator's decision. Specifically, Woodland Park argues that the trial court should have applied a deferential standard of review to the architect's decision instead of the arbitrator's decision. Neighbors Construction disagrees and argues that the trial court did not err when it applied a deferential standard of review to the arbitrator's decision because the architect's decision was merely advisory.

An appellate court's standard of review of an arbitration award is highly deferential. The court must affirm an award if the arbitrator acted within the scope of his or her authority. As long as the arbitrator's errors are not in bad faith or so gross as to amount to affirmative misconduct, an appellate court is bound by the arbitrator's findings of fact and conclusions of law. *City of Coffeyville v. IBEW Local No. 1523*, 270 Kan. 322, 336, 14 P.3d 1 (2000).

In this case, the architect ruled that Neighbors Construction was not entitled to receive the $200,000 that it alleged was owed to it under Application 20R. The arbitrator rejected the architect's decision and ruled, in part, that Woodland Park materially breached the contract by its nonpayment of the $200,000 under Application 20R. Woodland Park argues that the arbitrator should have de-

ferred to the architect when he made his decision, *i.e.*, that that architect was the "first arbitrator" and that the trial court erred in giving deference to the "second arbitrator" instead of the architect. In other words, Woodland Park argues that "if the proper standard of review was utilized by the second arbitrator, he would have been reviewing the initial decisions of the Architects solely for fraud, gross mistake, irrational interpretations of the contract or errors as a matter of law."

Woodland Park's argument is misplaced. In its brief, Neighbors Construction relies on *O. K. Johnson Electric, Inc. v. Hess-Martin Corporation, Inc.*, 204 Kan. 478, 464 P.2d 206 (1970). *O. K. Johnson* involved a payment dispute between a subcontractor and a general contractor. The general contractor refused to pay the subcontractor the full amount of money that the subcontractor alleged was owed to it under the contract. The general contractor maintained that the subcontractor was not entitled to payment because the subcontractor had used excess labor in performing its subcontractor work. The terms of the parties' contract required that the total direct cost, which was used to calculate the subcontractor's compensation, was "subject to approval" of the architect. 204 Kan. at 479. On appeal, the owner of the construction project (who indemnified the general contractor) argued that the subcontractor was not entitled to payment because the architect's decision to refuse payment was binding and final absent a showing of fraud, bad faith, or gross mistake.

In disagreeing with the owner's contention, our Supreme Court noted the following rule:

"In building and construction contracts the parties frequently agree that the finding of an architect or other designated person in respect to quantity and character of work done shall be conclusive, in which case it can only be impeached upon the ground of fraud, gross mistake, bad faith, undue influence, or some other good cause. [Citations omitted.] But the decision of the person designated on matters entrusted to him is deemed final and conclusive only where it appears from express terms of the contract, or from plain language therein, that the parties intended his decision have that effect. [Citations omitted.]" *O. K. Johnson*, 204 Kan. at 483.

The *O. K. Johnson* court reasoned that the architect's payment decision was not final because the express terms and plain language

of the contract did not show that the architect's decision was final. Moreover, the *O. K. Johnson* court reasoned that the subject to approval clause "lack[ed] plain and unequivocal language indicating a binding conclusive effect was to be given any decision rendered by . . . the architect." 204 Kan. at 484.

Neighbors Construction's reliance on *O. K. Johnson* is warranted. Here, like the contract language in *O. K. Johnson*, the express terms and plain language of the construction agreement with Woodland Park failed to show that the architect's decision was to be final and conclusive. For example, Section 4.6.1 of the General Conditions contains the decisions that are considered to be final by the architect. Under this section, the architect is the sole decision maker on rulings of aesthetic effects and claims waived under Sections 4.3.10, 9.10.4, and 9.10.5, *i.e.*, the architect's rulings on these decisions are not subject to arbitration. Section 4.6.1, however, does not contain a similar finality clause for payment disputes. Because Section 4.6.1 contains a clause for when the decisions of the architect are final and this section fails to include payment disputes, the contract fails to show that the architect's payment dispute decision is final and conclusive.

Moreover, Section 4.4.1 further supports the conclusion that the architect's payment dispute decision was not final. As mentioned earlier, Section 4.4.1 states:

"Decision of Architect. Claims . . . shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration, or litigation . . . unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect."

Thus, Section 4.4.1 shows that the architect's decision is merely a condition precedent to arbitration. If the architect's decision is final, the condition precedent language would be unnecessary. Indeed, the condition precedent language would be merely surplusage as neither party would be entitled to mediation or arbitration.

Although Section 4.4.5 states that "[t]he approval or rejection of a Claim by the Architect shall be final and binding on the parties," this section is qualified by the phrase that directly follows this language, which states that the architect's decision is "subject to me-

diation and arbitration." Moreover, the finality of the architect's ruling under Section 4.4.5 is further qualified by Section 4.4.6, which requires the parties to make a demand for arbitration within 30 days of the architect's written decision. If the parties fail to make a demand for arbitration within the applicable time frame, then the architect's written decision becomes final. Thus, Section 4.4.6 indicates that the arbitrator's decisions—except those of aesthetic effect or those waived under Sections 4.3.10, 9.10.4, and 9.10.5— are not final unless the parties fail to make a demand for arbitration within 30 days. Additionally, Section 4.4.6 clearly states that "[i]f the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered into evidence, but shall not supersede arbitration proceedings . . . ." Here, if the architect's payment decision is final and subject to deference by the arbitrator, then there would be no need to enter the architect's decision into evidence; instead, the architect's decision would be final and arbitration proceedings would be unnecessary. Yet, the express terms and the plain language of the contract do not lead to this interpretation. Consequently, Woodland Park's argument fails because the architect's decision was not final and therefore not entitled to deference by the arbitrator or the trial court.

Other jurisdictions have reached similar decisions under analogous circumstances. See, *e.g.*, *Sue Klau Enterprises, Inc. v. Am. Fid. Fire Ins. Co.*, 551 F.2d 882, 886 (1st Cir. 1977) (The architect's decision became final after defendant failed to file required notice requesting arbitration within 30 days of architect's decision.); *Sussex County Senior Services, Inc. v. Carl J. Williams & Sons, Inc.*, No. CIV.A. 99-473-GMS; 2000 WL 1726527, at *4 (D. Del. 2000) (unpublished opinion) (The written decision of the architect becomes final and binding under these circumstances: [1] the decision must inform parties that the ruling is "final but subject to arbitration"; [2] the decision must tell the parties that they must file a demand for arbitration within 30 days if they want to preserve its claims; and [3] the party must fail to request arbitration within 30 days); see also *Beers Construction Co. v. Pikeville United Methodist Hospital of Kentucky, Inc.*, No. 03-6264, 129 Fed. Appx. 266, 271, 2005 WL 977264 (6th Cir. 2005) (unpublished opinion) (The

architect's decision was "merely advisory" where contract stated architect's decisions were "final and binding" because phrase was qualified by the phrase "subject to legal proceedings."). Although not binding precedent upon us, these cases further illustrate that the architect's payment dispute decision was not entitled to deference.

Moreover, Woodland Park conceded at oral arguments that it had the power to choose the architect and did choose the architect in this case. Certainly, as the owner of the project it is understandable that Woodland Park would choose the architect. The architect chosen by Woodland Park should be allowed to make final decisions regarding aesthetics. But this does not mean that the architect's decision as to payment disputes was final and binding on the parties. In addition, Woodland Park also conceded at oral argument that an adversarial process was not used when the architect made his decision. For example, no witnesses were called and no evidence was presented to the architect before he made his decision. These facts further support our decision that the architect's payment dispute decision was not final and binding.

For the foregoing reasons, the trial court applied the proper standard of review when it confirmed Neighbors Construction's arbitration award. The express terms and plain language of the contract did not show that the architect's payment dispute decision was final. Thus, the trial court did not err when it failed to defer to the architect's decision instead of the arbitrator's decision. Consequently, we affirm the trial court's decision.

*Did the Trial Court Err When It Ruled That the Arbitrator Did Not Exceed His Statutory Power or Show a Manifest Disregard for the Law?*

Next, Woodland Park argues that the trial court erred in failing to rule that the arbitrator exceeded his statutory power. Moreover, Woodland Park argues that the trial court erred in confirming the arbitrator's award because the arbitrator showed a manifest disregard for Kansas law. On the other hand, Neighbors Construction argues that Woodland Park has intermixed statutory and nonsta-

tutory grounds for relief in its brief, which makes it difficult to comprehend Woodland Park's precise argument on appeal.

The Kansas Uniform Arbitration Act, which is set forth at K.S.A. 5-401 *et seq.*, allows a party to appeal from an order confirming or vacating an arbitration award. K.S.A. 5-418(a). A trial court must presume an arbitration award is valid unless there is proof of one of the specific grounds set forth in K.S.A. 5-412(a). *Moreland v. Perkins, Smart & Boyd*, 44 Kan. App. 2d 628, 633, 240 P.3d 601 (2010).

K.S.A. 5-412(a) sets forth five circumstances where an arbitration award must be vacated.

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405, as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 and the party did not participate in the arbitration hearing without raising the objection."

Nevertheless, K.S.A. 5-412(a) then states: "But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Moreover, our court has considered an additional ground for vacating an arbitration award: when there is a "manifest disregard" of Kansas law by the arbitrator. See *Moreland*, 44 Kan. App. 2d 628, Syl. ¶ 12; *Griffith v. McGovern*, 36 Kan. App. 2d 494, 499, 141 P.3d 516 (2006). In *Moreland*, this court explained that manifest disregard of the law occurs when an arbitrator knows of a governing legal principle but refuses to apply it—not when an arbitrator merely misinterprets the law. 44 Kan. App. 2d at 635.

As mentioned earlier, an appellate court's standard of review of an arbitration award is highly deferential. The court must affirm an award if the arbitrator acted within the scope of his or her authority. As long as the arbitrator's errors are not in bad faith or

so gross as to amount to affirmative misconduct, an appellate court is bound by the arbitrator's findings of fact and conclusions of law. *City of Coffeyville*, 270 Kan. at 336. Moreover, an arbitrator is not required to provide reasons for his or her award. *Moreland*, 44 Kan. App. 2d at 633.

Our court has further explained the standard of review for an arbitration decision:

" 'Generally, where the parties have agreed to be bound to a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly made. Nothing in the award relating to the merits of the controversy, even though incorrectly decided, is grounds for setting aside the award in the absence of fraud, misconduct, or other valid objections. Further, where an arbitration award made under the Kansas Uniform Arbitration Act is attacked by one of the parties, it is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrators. [Citations omitted.] Ordinarily, an arbitrator's award will not be subject to judicial revision unless such award is tainted or based on an irrational interpretation of the contract. [Citations omitted.]' " *Nowicki v. Project Paint Research Labs*, 40 Kan. App. 2d 733, 737, 195 P.3d 273 (2008). (Quoting *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 689, 751 P.2d 122 [1988]).

Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of upholding the award. According to Kansas precedents, Kansas courts must exercise immense caution when asked to vacate an arbitration award. Because a focal purpose of arbitration agreements is to avoid the expense and delay of court proceedings, judicial review of an arbitration award is very narrowly limited. See *Moreland*, 44 Kan. App. 2d at 635-36. The party seeking that an arbitration award be vacated bears the burden of proving a basis for setting aside the award. *Griffith*, 36 Kan. App. 2d at 500.

Woodland Park's statutory arguments fall under K.S.A. 5-412(a)(3), and we have paraphrased them as follows:

(1) The arbitrator exceeded his power by rewriting the contract because he ruled that Woodland Park's nonpayment of the $200,000 was a material breach of the contract.

(2) The arbitrator exceeded his power by deleting terms in the contract.

(3) The arbitrator exceeded his power by rewriting the contract to delete the liquidated damages provision.

(4) The arbitrator exceeded his power by failing to grant specific performance.

(5) The arbitrator exceeded his power by excluding evidence.

(6) The arbitrator exceeded his power by rewriting the lien release provisions under the contract.

(7) The arbitrator exceeded his power by rewriting the contract to "change its very essence."

The powers of an arbitrator or arbitrators ordinarily are identified and defined in an agreement between the parties. Here, Section 4.6.2 of the General Conditions contains the parties' arbitration agreement. This section states that "[c]laims not resolved by mediation shall be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules [CIAR] of the American Arbitration Association currently in effect."

In this case, there is no indication that the parties have agreed to be bound by anything other than the CIAR. Thus, the CIAR in effect when the arbitration occurred would control. Rule 45(a) of the CIAR (2009 ed.) states that the arbitrator "may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including but not limited to, equitable relief and specific performance of a contract."

Woodland Park first argues that the arbitrator exceeded his power because he ruled that Woodland Park's nonpayment of the $200,000 was a material breach of the contract. In particular, Woodland Park lists several reasons why its nonpayment of the $200,000 was not a material breach of the contract. For instance, Woodland Park argues that because the parties' disputed payment issue involved only 1.2 percent of the contract, it cannot be said to be a material breach.

But even if Woodland Park is correct that it did not materially breach the contract, it still has failed to meet the high burden required by Kansas precedents to show that the arbitrator's ruling was outside the scope of his powers. Errors of law and fact, or an

erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly made. Nothing in the award relating to the merits of the controversy, even though incorrectly decided, is grounds for setting aside the award in the absence of fraud, misconduct, or other valid objections. *Nowicki*, 40 Kan. App. 2d at 737. Moreover, when there is evidence that the parties' contract contained a broad arbitration clause, that broad arbitration clause grants arbitrators wide discretion in ruling on the issues submitted for arbitration. In other words, evidence of a broad arbitration clause in the parties' contract can support the position that the issues addressed by the arbitrators were within the scope of their authority. See *City of Lenexa v. C.L. Fairley Constr. Co., Inc.*, 15 Kan. App. 2d 207, 211, 805 P.2d 507 (arbitrator did not exceed his statutory power when he ruled on procedural matters because parties' arbitration agreement contained broad arbitration clause), *rev. denied* 248 Kan. 994 (1991).

Here, the General Conditions of the parties' contract stated that the CIAR would control their arbitration. Under the CIAR Rule 45(a), the arbitrator was entitled to "grant any remedy or relief that the arbitrator deems just and equitable." In addition, an exhibit attached to Woodland Park's application to vacate or modify and correct arbitration states that "the parties have requested an [arbitration] award based on finding of fact and conclusions of law." Thus, even if Woodland Park's nonpayment of the $200,000 was not a material breach of the contract, the arbitrator's conclusion to the contrary alone is insufficient to set aside the arbitrator's ruling. As Woodland Park has failed to show that one of the previously mentioned limited reasons for vacating an arbitration award applies, we reject Woodland Park's excess of power argument.

The same rationale applies to Woodland Park's second, third, sixth, and seventh excess of power arguments, *i.e.*, that the arbitrator exceeded his power in: (2) deleting terms in the contract; (3) rewriting the contract to delete the liquidated damages provision; (6) rewriting the lien release provisions under the contract; and (7) rewriting the contract to "change its very essence." Woodland Park has failed to show that any of these decisions were outside the arbitrator's powers under the terms of the contract or the

CIAR. In fact, Neighbors Construction contends that "[Woodland Park's arguments on appeal are] yet another attempt to couch this as an excess of power issue; however [Woodland Park] is requesting the Court to reevaluate the evidence submitted to the Arbitrator and come to a different conclusion." The trial court asserted a similar position: "[Woodland Park] asks the Court to substitute its judgment for that of the arbitrator. This Court does not believe that is [its] function and will not do so."

Neighbors Construction and the trial court's positions are correct. Although Woodland Park maintains that the arbitrator exceeded his powers by either rewriting the contract or deleting some of its terms, the substance of Woodland Park's argument asks us to reevaluate the evidence under the arbitrator's decision. We refrain from doing so. Woodland Park's disagreement with the arbitrator's decision is insufficient to vacate the arbitration award. Consequently, Woodland Park's second, third, sixth, and seventh excess of power arguments must fail.

Woodland Park also fails to show that the arbitrator exceeded his power under its fourth excess of power argument that the arbitrator exceeded his power by failing to grant specific performance. Under CIAR Rule 45(a) the arbitrator was entitled to "grant any remedy or relief that the arbitrator deems just and equitable . . . including but not limited to . . . specific performance of a contract." Because the arbitrator was entitled to grant any remedy or relief, he did not exceed his power in failing to grant specific performance. In fact, the arbitrator was granted the power to choose any remedy that was just and equitable. Certainly, the arbitrator could have chosen to grant specific performance. But because the arbitrator was granted such a broad scope of power, it cannot be said that he exceeded his power in granting a remedy other than specific performance. Consequently, Woodland Park's fourth excess of power argument must fail.

Finally, Woodland Park also fails to show that the arbitrator exceeded his power under its fifth excess of power argument—that the arbitrator exceeded his power by excluding evidence. In particular, Woodland Park argues that the arbitrator exceeded his power when he "refused to allow evidence of why [a] professional

would not 'seal' his work." Woodland Park also argues that "the second arbitrator absolutely refused to hear any evidence that could have immediately eliminated [many] of the questions about financing in this case." In support of its argument, Woodland Park cites to a portion of the arbitration transcript that reads as follows:

"[COUNSEL WEIR]: . . . I notice that it's not sealed. Do you seal any of your work?

"[WITNESS]: I don't routinely seal any of my correspondence, letters or reports, no.

"[COUNSEL WEIR]: For the record, can you tell me what sealing a document means to you?

"[THE ARBITRATOR]: I understand.

"[COUNSEL WEIR]: Well, I mean, just doing it for the record.

"[THE ARBITRATOR]: I understand. Let's move on please. You're not making a record on that point for the Court to review this deal. I represent people before the board of technical professions. I understand what a statute requires and what it means.

"[COUNSEL WEIR]: Okay.

"[COUNSEL WEIR]: So were any of the documents that you provided in this case any of the letters, your report, sealed?

"[WITNESS]: I routinely do not seal my reports."

The arbitrator's evidentiary powers are contained under CIAR Rule 33. Rule 33(a) and (b) (2009 ed.) read as follows:

"(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal Rules of evidence shall not be necessary.

"(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered. The arbitrator may request offers of proof and may reject evidence deemed by the arbitrator to be cumulative, unreliable, unnecessary, or of slight value compared to the time and expense involved. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where: 1) any of the parties is absent, in default, or has waived the right to be present, or 2) the parties and the arbitrators agree otherwise."

Here, Woodland Park has failed to give any indication as to how the arbitrator's actions exceeded the scope of his authority, *i.e.*, that the arbitrator's actions fall outside his authority to determine the admissibility, relevance, and materiality of the evidence offered. Because the arbitrator had the power to make these deci-

sions, he did not exceed his authority in ruling on the admissibility of evidence. Indeed, the arbitrator allowed Woodland Park to question the witness about the seal. Although the arbitrator could have used a better choice of words, he merely stated that he was familiar with the applicable statutes and understood them. Thus, Woodland Park has failed to meet its burden to show that the arbitrator exceeded his power by excluding evidence. Consequently, Woodland Park's fifth excess of power argument must fail.

We also note that Woodland Park cites to *Kopp v. Kopp*, 44 Kan. App. 2d 573, 239 P.3d 878 (2010). But Woodland Park fails to indicate how the *Kopp* case supports its position that the arbitrator exceeded his power. Given the distinctly different posture of the case now before us, *Kopp* is distinguishable.

*Kopp* involved a real estate contract dispute between two brothers. After litigation was initiated, the brothers essentially agreed to settle their dispute, but they were unable to reconcile their differences over the settlement agreement. Thus, one of the brothers moved to enforce the settlement agreement. The trial court determined that an agreement had been reached with respect to all the material terms, and the court then resolved the nonmaterial discrepancies. As part of the journal entry, the trial court incorporated a copy of the contract, which contained an arbitration clause. One of the brothers later moved for arbitration, at which the arbitrator ruled on an issue the court had already resolved: "the existence of a valid and enforceable agreement between the parties. 44 Kan. App. 2d at 582. The *Kopp* court held in part that the arbitrator exceeded his power when he decided an issue that had already been determined by the trial court. The *Kopp* court reasoned:

"The arbitrator had the power to resolve disputes with respect to the parties' rights and obligations under the real estate sales contract which embodied the parties' settlement agreement. Notwithstanding the district court's directions to the contrary, the arbitrator did not have the power to determine whether the contract (which was the basis for the arbitrator's power to act) was in force. As discussed earlier, that was a matter for the district court. In ruling on the enforceability of the parties' contract, the arbitrator exceeded his power. Accordingly, the district court erred in failing to vacate the arbitrator's award." *Kopp*, 44 Kan. App. 2d at 582-83.

In this case, however, no such problem exists. Unlike *Kopp*, where the arbitrator decided an issue that had already been determined by the trial court, the arbitrator here simply resolved a dispute with respect to Neighbors Construction and Woodland Park's rights under the construction contract: whether Neighbors Construction was entitled to damages for Woodland Park's alleged breach of contract. Thus, even if Woodland Park had explained its argument adequately, its reliance on *Kopp* is misplaced because *Kopp* is distinguishable from this case.

As stated earlier, Woodland Park commingles nonstatutory grounds with statutory grounds to support its argument that the arbitration award should be vacated, which makes Woodland Park's precise argument more difficult to understand. In doing so, Woodland Park seems to maintain that the arbitrator's award was in manifest disregard of the law. For instance, Woodland Park contends that "[t]he 2nd Arbitrator['s] refusal to even recognize or apply specific terms in this Contract is also a 'manifest disregard of the law' requiring enforcement of contract terms and not re-writing or making new contracts for the parties." In addition, Woodland Park argues "[s]uch refusal to recognize contract provisions and remedies for one party at the same time it applies other provisions but the same remedy to the other party is a 'manifest disregard for the law' and exceeds the Arbitrator['s] 'power.' "

Kansas courts have recognized nonstatutory grounds for vacating an arbitration award when an applicant demonstrates the arbitrator's award is in manifest disregard of the law. See *e.g.*, *Griffith*, 36 Kan. App. 2d at 499 (citing *Jackson Trak Group*, 242 Kan. at 689); see also *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (manifest disregard of the law, violation of public policy, and denial of a fundamentally fair hearing). Manifest disregard of the law occurs when the arbitrator knew of a governing legal principle yet refused to apply it, but this exception does not apply when an arbitrator simply misinterprets the law. *Moreland*, 44 Kan. App. 2d at 635; see *Jackson Trak Group*, 242 Kan. at 689; *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 [10th Cir. 1995]).

Woodland Park has failed to cite to any Kansas case, nor does our research find any case, where an arbitration award was actually

overturned for a manifest disregard of the law. See *Griffith*, 36 Kan. App. 2d at 500; *Dunn v. A.G. Edwards & Sons, Inc.*, No. 96,669, 2007 WL 2767997, at *7 (Kan. App. 2007) (unpublished opinion) ("[The] Dunns have failed to demonstrate the arbitrator manifestly disregarded the law in calculating damages, and we conclude the district court did not err in confirming the award."). Although Woodland Park maintains that the arbitrator showed a manifest disregard of the law, it has failed to present evidence to show that the arbitrator knew of a governing legal principle but refused to apply it. Instead, Woodland Park once again argues that the arbitrator should have interpreted the contract in such a way as to benefit its position. Thus, Woodland Park's manifest disregard of the law argument is not warranted by the law. When dealing with the issue of manifest disregard of the law, this court declared:

"Courts must tread lightly in the area of manifest disregard of the law. The statutory mandate of K.S.A. 5-412(a) indicates the legislature's clear intention to not permit a court to vacate or refuse to confirm an award even if the relief 'could not or would not be granted by a court of law or equity.'

"In short, even though the limited scope of review of what could appear to be very odd arbitration awards might cause cold shivers to go down the spines of reviewing courts, highly limited review is the law." *Moreland*, 44 Kan. App. 2d at 636.

Woodland Park has failed to prove that the arbitrator showed a manifest disregard of the law. Thus, Woodland Park's nonstatutory grounds argument must fail.

Next, Woodland Park argues that the arbitrator's award was based on an irrational interpretation of the contract. Our Supreme Court has stated that "ordinarily, an arbitrator's award will not be subject to judicial revision unless such award is tainted or based on an irrational interpretation of the contract." *Jackson Trak Group*, 242 Kan. at 689. Although several Kansas appellate cases use the phrase "irrational interpretation of the contract," it seems that no Kansas case has stated what is required to show that the award was based on an irrational interpretation of the contract. Kansas cases have simply summarily dismissed this argument. See *Foley Co. v. Grindsted Products, Inc.*, 233 Kan. 339, 347, 662 P.2d 1254 (1983) ("[A]rbitration awards may be vacated only if they

were tainted by improbity or based on a completely irrational interpretation of the contract. [Citation omitted]. No such conditions exist in this case and [the defendant general contractor] has never asserted or even attempted to meet such a condition to set aside the arbitration award.").

Thus, we look to other jurisdictions for guidance. An arbitration award may be found irrational only under extraordinary circumstances. *Nat. R.R. Pass. Corp. v. Chesapeake & O. Ry.*, 551 F.2d 136, 142 (7th Cir. 1977) ("[A]ssuming 'irrationality' is a possible ground for vacating an award under the Federal Arbitration Act, its application will be reserved [only] for truly extraordinary circumstances."). Indeed, when there is a rational basis for the award, it must be upheld. *Carte Blanche (Singapore) v. Carte Blanche Intern.*, 683 F. Supp. 945, 951 (S.D.N.Y. 1988). When the facts and the law support the arbitrator's decision, the arbitration award may be shown to have a rational basis. See, *e.g., Amoco Overseas Oil Co. v. Astir Navigation*, 490 F. Supp. 32, 38 (S.D.N.Y. 1979); *Mobile Oil Indonesia v. Asamera Oil, Etc.*, 487 F. Supp. 63, 65 (S.D.N.Y. 1980) (motion to vacate arbitration denied because arbitrators' decision supported by " 'barely colorable justification' "; arbitrators based award on applicable state law, and arbitrators construed agreement as requested); *In Matter of Manhattan & Bronx Surface Transit Operating Authority v. Local 100, Transport Workers Union of America*, 84 A.D.2d 749, 750, 443 N.Y.S.2d 875 (1981) (arbitration award not irrational where agreement did not specify details of scheduling, parties' past practice established scheduling routine, and issue had been left to discretion of arbitrator).

Woodland Park argues that the arbitrator's decision was based on an irrational interpretation of the contract because he ruled that Woodland Park materially breached the contract by its failure to pay Neighbors Construction the $200,000 under Application 20R. Even so, the facts of this case do not present an extraordinary situation where the irrational interpretation doctrine should be applied.

In this case, the arbitrator ruled that Woodland Park materially breached the contract because it failed to pay Neighbors Construc-

tion the $200,000 under Application 20R. Nevertheless, the essence of the arbitrator's ruling does not rely on the material breach, because the arbitrator deducted "credits" and correction or completion costs from Neighbors Construction's arbitration award. For these reasons, Woodland Park's argument that the arbitrator's award was based on an irrational interpretation of the contract fails.

Woodland Park has also raised numerous other statutory and nonstatutory arguments as to why the arbitration award should be vacated. None of Woodland Park's arguments is convincing. Consequently, we affirm the trial court's decision not to vacate the arbitration award.

*Attorney Fees*

Next, Woodland Park argues that the arbitrator exceeded his power when he awarded Neighbors Construction attorney fees and interest. Specifically, Woodland Park maintains the following: (1) that the arbitrator exceeded his power in awarding Neighbors Construction attorney fees and interest because he applied the wrong statute; (2) that the arbitrator exceeded his power in awarding Neighbors Construction attorney fees and interest because Section 4.3.10 of the parties' contract contained a waiver of consequential damages; and (3) that the arbitrator exceeded his power in awarding Neighbors Construction attorney fees because he ignored the requirement in the applicable statute that there be a prevailing party. On the other hand, Neighbors Construction disputes Woodland Park's assertions and contends that the arbitrator did not exceed his power because the CIAR expressly granted the arbitrator authority to award attorney fees and interest and because the consequential damages waiver under Section 4.3.10 does not relate to an award of attorney fees and interest.

The applicable standard of review of an arbitration award is detailed extensively in the previous sections. Thus, it will not be repeated here.

In support of its argument, Woodland Park relies on *Flenory v. Eagle's Nest Apartments*, 28 Kan. App. 2d 906, 22 P.3d 613 (2001). Woodland Park maintains that *Flenory* "specifically requires 'va-

cating' an award that improperly applies a statute that does not apply." Neighbors Construction disagrees and argues the following:

"*Flenory* is distinguishable from this case in that there was no motion filed to vacate an arbitration award but instead was a party's attempt to eliminate an arbitrator's enforcement of a statutory cap on the damages award. Furthermore, *Flenory* stands only for the holding that where the parties want a statutory cap to apply to any arbitration award it must be included in the parties' written agreement. As set forth below, *Flenory* is further distinguishable in that the parties here specifically agreed that the AAA Rules would apply which permits the award of fees."

Neighbors Construction's argument is correct. In *Flenory*, a mother brought a wrongful death action against an apartment complex after her son nearly drowned in a pool owned by the complex and later died in a hospital. The parties submitted the claim to binding arbitration under a high-low award agreement in which the minimum award would be $50,000 and the maximum $300,000. If the arbitrator's award fell between those two amounts, then the parties' agreed that the amount of the award would control. After a hearing, the arbitrator made the following award:

" 'I have determined that the net award, after adjustment for fault of plaintiff and others, is as follows: for the survival action, no award: for the wrongful death action, pecuniary damages of $27,339.79 and nonpecuniary damages of either $100,000.00 or $137,500.00, *depending on whether the one hundred thousand dollar cap or the two hundred fifty thousand dollar cap applies.'* " 28 Kan. App. 2d at 906-07.

The arbitrator referred to the two damages caps because our Kansas Legislature had decided to increase the cap under K.S.A. 60-1903 for nonpecuniary damages in wrongful death actions from $100,000 to $250,000 effective July 1, 1998. See L. 1998, ch. 68, sec. 1. After the arbitrator made his decision, Flenory moved to have the trial court interpret the award, *i.e.*, to determine whether the statutory cap applied to the decision and, if so, whether the $100,000 or the amended statutory cap of $250,000 applied. The trial court held that the $100,000 cap was applicable to the nonpecuniary portion of the arbitrator's award. The *Flenory* court held that "the arbitrator exceeded his authority by providing for application of a statutory cap to Flenory's nonpecuniary damages." 28

Kan. App. 2d at 906. The *Flenory* court's reasoning reads as follows:

"The arbitrator was not empowered to apply a cap not agreed to by the parties. Here, in this quasi-judicial proceeding, the high-low agreement was a stand-in for the statutory cap.

"In our view, the arbitrator in this case can be compared to the jury in the traditional personal injury trial. Such a jury is instructed to decide liability and arrive at the amounts of various types of damages, if any. Only later does the court reduce any nonpecuniary damages award if it exceeds the applicable cap. This is what the parties or, in the event of a disagreement, the court would have done here if it had been necessary to confirm the award to the high-low agreement." 28 Kan. App. 2d at 907.

In other words, the *Flenory* court reasoned that the arbitrator exceeded his powers because he made a damages award outside the scope of his authority.

Unlike *Flenory*, where the arbitrator exceeded his power in granting an award outside the scope of his authority, the arbitrator in this case did not grant an award outside the scope of his authority. As mentioned by Neighbors Construction, the contract in this case expressly gave the arbitrator the authority to award attorney fees and interest. The applicable CIAR Rule 45(d), states that "[t]he award of the arbitrator may include: (i) interest at such rate and from such date as the arbitrator may deem appropriate; and (ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." Thus, because CIAR Rule 45(d) expressly gave the arbitrator the authority to award attorney fees, he did not exceed his authority in doing so.

Moreover, Woodland Park has failed to show why the consequential damages waiver clause under Section 4.3.10 applies to attorney fees or interest. In Kansas, common-law consequential damages are defined as damages that are recoverable from a breach of contract, which are limited to the damages that arise from the breach itself, or damages that "may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. [Citations omitted.]" *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 153, 673 P.2d 1200 (1984).

Attorney fees do not fall·under the category of consequential damages because they are treated separately by Kansas courts. See, *e.g.*, *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 215 P.3d 561 (2009) (containing a separate analysis for award of attorney fees and consequential damages); *Hochman*, 9 Kan. App. 2d at 155. The treatment of interest, however, is not as clear; our court has held that interest payments can be included as consequential damages. See *Hochman*, 9 Kan. App. 2d at 154.

The consequential damages waiver clause is contained under Section 4.3.10 of the General Conditions, which reads as follows:

"Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. *This mutual waiver includes*:

.1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work." (Emphasis added.)

Woodland Park's waiver argument fails for several reasons. First, Section 4.3.10 includes the claims that are waived under the consequential damages clause. This clause does not include attorney fees or interest. Because this clause does not include these items, it cannot be said that they were waived by Neighbors Construction. Second, attorney fees are not considered as consequential damages in Kansas. Thus, even if the waiver applied, Woodland Park's argument would still fail because attorney fees are treated separately from consequential damages. Third, to the extent that interest could be considered as consequential damages, Woodland Park's argument still fails because the consequential damages waiver provision is inconsistent with the power that was granted to the arbitrator under CIAR Rule 45. Because Rule 45 gave the arbitrator the express power to award interest, the arbitrator's power was not limited by the waiver provision. Regardless, the arbitrator's power under Rule 45 is not inconsistent with the consequential damages waiver clause under Section 4.3.10 here because the waiver clause

fails to make any reference to interest. Thus, the arbitrator did not exceed his powers in awarding attorney fees and interest to Neighbors Construction.

Woodland Park next argues that the award of attorney fees and interest was improper here because the arbitrator applied the Kansas Fairness in Private Construction Contract Act, K.S.A. 16-1801 *et seq.*, instead of the Kansas Fairness in Public Construction Contract Act, K.S.A. 16-1901 *et seq.* In addition, Woodland Park argues that even if the arbitrator's use of the wrong statute is insufficient to vacate the award, the award should be vacated because attorney fees can be awarded only to the prevailing party. In other words, Woodland Park argues that Neighbors Construction should not have received an award of attorney fees and interest because Neighbors Construction was not the prevailing party under the arbitration ruling.

The relevant Private Construction Contract Act statute, K.S.A. 16-1806, reads as follows:

"In any action to enforce K.S.A. 16-1803, 16-1804 or 16-1805, and amendments thereto, including arbitration, the court or arbitrator shall award costs and reasonable attorney fees to the prevailing party. Venue of such an action shall be in the county where the real property is located. The hearing in such an arbitration shall be held in the county where the real property is located."

The relevant Public Construction Contract Act statute, K.S.A. 16-1906, reads as follows:

"In any action to enforce K.S.A. 16-1903, 16-1904 or 16-1905, and amendments thereto, including arbitration, between a contractor and subcontractors or subcontractors and subcontractors, the court or arbitrator shall award costs and reasonable attorney fees to the prevailing party. Venue of such an action shall be in the county where the real property is located and under Kansas law. The hearing in such an arbitration shall be held in the county where the real property is located."

Woodland Park has failed to show why the arbitrator's decision should be vacated because of the use of K.S.A. 16-1806 instead of K.S.A. 16-1906. As previously discussed in detail, errors of fact and law alone are insufficient to vacate an arbitration award. Thus, Woodland Park is not entitled to relief even if the arbitrator relied on the wrong statute. Moreover, any error here would have been

harmless as the substance of the two statutes is the same in this case. Thus, the arbitrator did not err in awarding Neighbors Construction attorney fees and interest.

The trial court adequately handled Woodland Park's other argument that Neighbors Construction was not the prevailing party. The trial court stated:

"[Woodland Park] argues [that] to be the prevailing party [Neighbors Construction] must totally prevail. In *Szobszlay v. Glessner*, 233 Kan. 475, 482, 664 P.2d 1327 (1983), the Court indicated successful has been held to be synonymous with 'prevailing.' The Court defined successful party as 'substantially successful in a cause of action, although the judgment awarded him may have been reduced by an amount awarded the Defendant on a counterclaim or appeal.' The Court finds [Woodland Park's] position on this point without merit."

The trial court is correct. Here, Woodland Park argues that Neighbors Construction was not the prevailing party because Woodland Park received "credits" for correction or completion costs as a deduction from Neighbors Construction's arbitration award. But Woodland Park's argument fails as the trial court correctly points out that a successful party is defined as a party that is " 'substantially successful in a cause of action, although the judgment awarded him may have been reduced by an amount awarded the Defendant on a counterclaim or appeal.' " Here, the arbitrator stated: "I find in favor of Neighbors Construction Co., Inc. and enter this Award against Woodland Park at Soldier Creek, LLC in the amount of $1,277,770.31." Thus, Neighbors Construction clearly was the prevailing party. Consequently, Woodland Park's argument carries little weight and must fail.

For the foregoing reasons, the trial court did not err in confirming the arbitrator's award of attorney fees and interest.

*Did the Trial Court Err When It Denied Woodland Park's Motion to Add the Arbitration Transcript to the Record on Appeal?*

Finally, Woodland Park maintains that the trial court erred when it denied its motion to add certain documents to the record. Nevertheless, Woodland Park fails to cite any authority to support its argument that these documents should have been included in the trial court record and in the record on appeal. Neighbors Construc-

tion points out Woodland Park's deficient argument and states: "[Woodland Park] provides no legal support for its contention that the District Court erred by refusing to transfer the arbitration transcript record." " ' "Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue." ' " *McGinty v. Hoosier*, 291 Kan. 224, 244, 239 P.3d 843 (2010) (quoting *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 [2005]). An issue not briefed by the appellant is deemed waived or abandoned. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009). Consequently, Woodland Park's argument is deemed waived or abandoned and will not be addressed in this opinion.

Affirmed.